Luis Donato **RODRIQUES**, Petitioner,

v.

**IMMIGRATION AND NATURALIZA-TION SERVICE**, Respondent.

No. 16098.

United States Court of Appeals
Third Circuit.

Argued Oct. 30, 1967.

Decided Jan. 15, 1968.

Lawrence Cooper, Schapira, Steiner & Walder, Newark, N. J., for petitioner.

Merna B. Marshall, Asst. U. S. Atty., Philadelphia, Pa., for respondent.

Before McLAUGHLIN, KALODNER and GANEY, Circuit Judges.

## OPINION OF THE COURT

GANEY, Circuit Judge.

This is a petition for review of an order of the Board of Appeals dismissing an appeal from an order of deportation entered after hearing by a Special Inquiry Officer of the Immigration and Naturalization Service.

Petitioner was a native and citizen of Portugal, forty years of age, who had resided in the United States from the date of his arrival, February 8, 1959, as a temporary visitor. On April 14, 1959, he contracted a marriage with a citizen of the United States, and he was granted, on May 25, 1959, an adjustment of status from that of non-quota visitor to that of a permanent resident under Section 245 of the Immigration and Nationality Act, 8 U.S.C. Section 1255.[1] Subsequently, the Immigration and Naturalization Service began proceedings on January 9, 1964, under Section 246 of the above Act, 8 U.S.C. Section 1256,[2] to rescind the grant of permanent resident which had been accorded him. After a hearing, the Special Inquiry Officer found that the grant of permanent residence had been obtained on the basis of a marriage which was for the sole purpose of evading the immigration laws and a rescission order was entered on May 25, 1964. On October 28, 1964, by virtue of an appeal to the Board of Immigration Appeals, the rescission order was affirmed and petitioner did not seek an appeal therefrom. The restoration of the peti-

1. This section reads as follows: "§ 1255. Adjustment of status of nonimmigrant to that of person admitted for permanent residence; record

"(a) The status of an alien who was lawfully admitted to the United States as a bona fide nonimmigrant and who is continuing to maintain that status may be adjusted by the Attorney General in his discretion (under such regulations as he may prescribe to insure the application of this paragraph solely to the cases of aliens who entered the United States in good faith as nonimmigrants) to that of an alien lawfully admitted for permanent residence as a quota immigrant or as a nonquota immigrant under section 1101(a) (27) (A) of this title, if (1) the alien makes application for adjustment, (2) the alien is admissible to the United States for permanent residence under this chapter, * * *.

"(b) Upon the approval of an application for adjustment made under subsection (a) of this section, the Attorney General shall record the alien's lawful admission for permanent residence as of the date the order of the Attorney General approving the application for the adjustment of status is made, and the Secretary of State shall reduce by one the quota of the quota area to which the alien is chargeable under section 1152 of this title for the fiscal year current at the time such adjustment is made."

2. This section reads as follows: "§ 1256. Rescission of adjustment of status; report to Congress; effect upon naturalized citizen

"(a) * * * If, at any time within five years after the status of a person has been otherwise adjusted under the provisions of section 1255 or 1259 of this title or any other provision of law to that of an alien lawfully admitted for permanent residence, it shall appear to the satisfaction of the Attorney General that the person was not in fact eligible for such adjustment of status, the Attorney General shall rescind the action taken granting an adjustment of status to such person and cancelling deportation in the case of such person if that occurred and the person shall thereupon be subject to all provisions of this chapter to the same extent as if the adjustment of status had not been made.

"(b) Any person who has become a naturalized citizen of the United States upon the basis of a record of a lawful admission for permanent residence, created as a result of an adjustment of status for which such person was not in fact eligible, and which is subsequently rescinded under subsection (a) of this section, shall be subject to the provisions of section 1451 of this title as a person whose naturalization was procured by concealment of a material fact or by willful misrepresentation."

tioner to the position of an alien without permanent residence caused the Immigration Service to give him until April 9, 1965, to depart the country and petitioner, having failed to depart, deportation proceedings were started on August 12, 1965, under Section 242(b), 8 U.S.C. Section 1252(b),[3] on the ground that he had remained longer than permitted, in violation of Section 241(a)(2), 8 U.S.C. Section 1251(a)(2).[4] After hearing, on November 1, 1965, the Special Inquiry Officer found petitioner deportable, but granted his application for the privilege of voluntary departure in lieu of deportation. The petitioner, not having exercised his right of voluntary departure, the deportation order became final on February 18, 1965.

The petition for review, which is now before us, was filed on August 11, 1966, under 8 U.S.C. Section 1105a, within six months of the deportation order and challenges the latter only insofar as it derives from the final rescission order of October 28, 1964, and, accordingly, it is directed exclusively at the underlying rescission order, which was appellant's main argument at hearing before this court and constitutes the main contention in his brief.

At the hearing before the Board of Appeals from which petitioner seeks review, the petitioner contended (1) that at the hearing resulting in the rescission order, there was improperly admitted into evidence a copy of the petitioner's criminal conviction, which should not have been admitted in that it was not a final judgment, since it was then presently being appealed to the United States Court of Appeals for this circuit; (2) that the rescission of status order, upon which the decision therein appealed from was based, was erroneous and should be reversed; and (3) that the rescission of status order and the decision therein was partly based on the criminal charges brought against the petitioner and that until the criminal conviction was made

3. This subsection reads as follows: "§ 1252. Apprehension and deportation of aliens—Arrest and custody; review of determination by court
    \*      \*      \*      \*      \*
    "(b) A special inquiry officer shall conduct proceedings under this section to determine the deportability of any alien, and shall administer oaths, present and receive evidence, interrogate, examine, and cross-examine the alien or witnesses, and, as authorized by the Attorney General, shall make determinations, including orders of deportation. \* \* \* Proceedings before a special inquiry officer acting under the provisions of this section shall be in accordance with such regulations, not inconsistent with this chapter, as the Attorney General shall prescribe. Such regulations shall include requirements that—
    "(1) the alien shall be given notice, reasonable under all the circumstances, of the nature of the charges against him and of the time and place at which the proceedings will be held;
    "(2) the alien shall have the privilege of being represented (at no expense to the Government) by such counsel, authorized to practice in such proceedings, as he shall choose;

    "(3) the alien shall have a reasonable opportunity to examine the evidence against him, to present evidence in his own behalf, and to cross-examine witnesses presented by the Government; and
    "(4) no decision of deportability shall be valid unless it is based upon reasonable, substantial, and probative evidence.
    The procedure so prescribed shall be the sole and exclusive procedure for determining the deportability of an alien under this section. In any case in which an alien is ordered deported from the United States under the provisions of this chapter, or of any other law or treaty, the decision of the Attorney General shall be final. \* \* \*"

4. This subsection reads as follows: "§ 1251. Deportable aliens—General classes
    "(a) Any alien in the United States (including an alien crewman) shall, upon the order of the Attorney General, be deported who—
    \*      \*      \*      \*      \*
    "(2) entered the United States without inspection or at any time or place other than as designated by the Attorney General or is in the United States in violation of this chapter or in violation of any other law of the United States; \* \* \*."

final by exhaustion of legal appeals, it should not have been allowed to be a factor in the hearing and the Board should suspend action on the appeal until the criminal convictions were made final by the Court of Appeals.

In the deportation proceedings, the Special Inquiry Officer received in evidence, Exhibit 3, the decision of the Special Inquiry Officer in the rescission proceedings which consisted of some twenty-one pages in length, wherein he made an exhaustive review of the testimony of the witnesses and at the end of which was his order rescinding the petitioner's permanent residence status. The facts set forth therein were voluminous, the witnesses highly contradictory, some vacillating, and some greatly biased and interested, and in their totality posed a genuine question of credibility. Also received in evidence was Exhibit 4, the decision of the Board of Appeals dismissing the appeal from its order affirming the rescission order and, here again, it recited in some detail the evidence taken at the rescission hearing. Further, the Special Inquiry Officer in the deportation proceedings held that the pending conviction of the petitioner for conspiracy to defraud the Government in the enforcement of the immigration laws, by reason of his alleged sham marriage, then on appeal, had no bearing on the question of his deportation since if he was successful on appeal, a proper and adequate administrative and civil proceeding remained available for his protection and considering the purpose for which it was offered—corroboration—the judgment of conviction, though on appeal, was final here. Huron Holding Corp. v. Lincoln Mine Operating Co., 312 U.S. 183–189, 61 S.Ct. 513, 85 L.Ed. 725.

In the light of the record, the Special Inquiry Officer ordered the petitioner deported, but accorded him voluntary departure, if he so wished. In the deportation proceedings, the Special Inquiry Officer, in his decision, made no reference to any burden of proof which was cast upon the Service and the only conclusion that can be drawn, absent any reference at all to the burden of proof requisite, is that since he had the decision of the Special Inquiry Officer in the rescission proceedings before him, he adopted the burden of proof therein stated, that is, that the Service must establish its case by "reasonable, substantial, and probative evidence."

While no appeal was taken from the decision and order of the Board of Appeals entered on October 28, 1964, affirming the rescission order, by way of judicial review, it may be said that the order in the rescission hearing and the order dismissing appellant's appeal therefrom by the Board of Appeals became finalized. However, in all fairness it also may be said that this was undoubtedly so because as of the date of the rescission order, as well as of the order of deportation, November 1, 1965, the law with respect to the burden of proof cast upon the Service in deportation cases had been correctly stated in the rescission proceedings.

■■ However, in the case of Woodby v. Immigration Service, 385 U.S. 276, 87 S.Ct. 483, 17 L.Ed.2d 362, decided December 12, 1966, a drastic change occurred in the law from that which had heretofore existed. There, the Court resolved the question presented concerning the nature of the burden of proof which the Government must sustain in deportation proceedings. As has been indicated, the well-established rule previous to the decision in this case, which the courts had consistently applied as the standard for the burden of proof, was the "standard of reasonable, substantial, and probative evidence." This standard had been applied after the adoption of Section 242(b), 66 Stat. 210, 8 U.S.C. § 1252(b) (4). Rowaldt v. Perfetto, 355 U.S. 115, 120–121, 78 S.Ct. 180, 2 L.Ed.2d 140. Later in 1951, Section 106(a) (4) of the Act, 75 Stat. 651, 8 U.S.C. § 1105a (a) (4) 1961, there was the first expressed statutory standard of judicial review. It provided, "The petition [for review] shall be determined solely upon the administrative record upon which the deportation order is based

and the Attorney General's findings of fact, if supported by reasonable, substantial, and probative evidence on the record considered as a whole, shall be conclusive." However, this standard for the burden of proof in deportation hearings, as before indicated, was materially changed by Woodby v. Immigration Service, supra, when it held that the phrase "reasonable, substantial, and probative evidence" was not the guideline for the burden of proof which the Government had to meet in deportation proceedings, but that it only served as the scope of judicial review and that no deportation order could be entered unless the Government proved by "clear, unequivocal and convincing evidence" that the facts alleged as ground for deportation were true.

▇▇▇ The question here posed is whether a deportation order predicated on a rescission order which held the Government burden to have been met when the matter is established by reasonable, substantial and probative evidence, is a proper one. We hold that the deportation order here entered, absent therein any reference to the burden of proof requisite for the Government, is directly in conflict with Woodby v. Immigration Service, supra. Indeed, since it had received in evidence the exhaustive opinion of the Special Inquiry Officer in the rescission proceedings wherein he reviewed the record and the order affirming the dismissal of the petitioner's appeal by the Board of Appeals, and with no other evidence of consequence additionally offered, shows, in our judgment, as indicated heretofore, that the hearing officer in the deportation proceedings adopted the standard for the burden of proof in the rescission proceedings and, accordingly, the standard requisite under *Woodby* supra, was not met. The standard there set for the burden of proof in deportation proceedings is a greater and higher one than "reasonable, sub-

stantial, and probative" and if this standard had been properly applied in the rescission hearing, it may well have changed the viewpoint of the rescission officer, as reflected in his order, and affirmed by the Board of Appeals. Additionally, this court cannot say, reviewing the evidence in the rescission hearing, that the Service established a burden that was "clear, unequivocal and convincing." That fact-finding decision is solely the province of the Special Inquiry Officer. *Woodby*, supra, 385 U.S. at p. 282, 87 S.Ct. 483.

▇▇ As to the remaining points advanced by the petitioner, that the admission into evidence of the bill of indictment and the judgment of conviction thereon was error, since the criminal conviction of petitioner was pending on appeal to this court—still pending due to the loss of the record and an attempted reconstruction of the same —we are in agreement with the holding of the Special Inquiry Officer thereon, for later guidance, in view of the decision here reached in the event the holding is not then moot. However, we cannot lend sanction to the present deportation order, violative of the teaching of Woodby v. Immigration Service, supra, at p. 286, 87 S.Ct. at p. 488, concluding: "We hold that no deportation order may be entered unless it is found by clear, unequivocal, and convincing evidence that the facts alleged as grounds for deportation are true." In sum, any deportation order founded on an order of rescission by a Special Inquiry Officer is void unless the standard of proof established in *Woodby*, supra, is applicable to the rescission proceeding. Petitioner's other contentions are without merit.

Accordingly, the judgment of the Board of Review is set aside and the matter is remanded to the Immigration and Naturalization Service for such further proceedings as, consistent with this opinion, it may deem appropriate.