MATTER OF YALDO

In Section 246 Proceedings

A-13777983

*Decided by Board August 12, 1968*

(1) Where an alien's supporting marriage for adjustment of status under section 245, Immigration and Nationality Act, as amended, was a sham marriage entered into to circumvent the immigration laws, testimony of the alien's wife concerning confidential communications between the spouses during the existence of the marriage is admissible in evidence in rescission proceedings under section 246 of the Act.

(2) In section 246 rescission proceedings, there must be an evaluation of all the evidence and a finding made with regard to its credibility before the clear, convincing and unequivocable burden of proof test of *Woodby* v. *Immigration and Naturalization Service*, 385 U.S. 276, comes into play.

ON BEHALF OF RESPONDENT:
John Palumbo, Esquire
21261 Kelly Road
East Detroit, Michigan 48021

ON BEHALF OF SERVICE:
Irving A. Appleman
Appellate Trial Attorney

The respondent, a native and citizen of Iraq, appeals from an order entered by the special inquiry officer on April 8, 1968 rescinding his adjustment of status which was granted on April 21, 1967 pursuant to the provisions of section 245 of the Immigration and Nationality Act. Counsel on appeal seeks a termination of the proceeding.

The respondent, an unmarried male alien, 21 years of age, last entered the United States through the port of New York on July 14, 1965. He was admitted as a student destined to the Electronics Institute of Technology at Detroit, Michigan until July 13, 1966. He was thereafter granted an extension of temporary stay until July 12, 1967.

The respondent married Sharon Florence, a native and citizen of the United States at Detroit, Michigan on December 12, 1966. She filed a petition to accord the respondent immediate relative status on December 28, 1966. The petition was approved on January 30, 1967. The respondent applied for status as a permanent resident alien pursuant to the provisions of section 245 of the Immigration and Nationality Act on February 17, 1967. The application was approved on April 21, 1967.

830

The respondent's wife advised the Immigration Service on May 25, 1967 that the respondent left her on or about May 15, 1967. The respondent filed a complaint for divorce against his wife on June 29, 1967 and on July 18, 1967 his wife filed an answer to the complaint and a counterclaim for annulment. A default judgment of annulment was entered by the Circuit Court for the County of Wayne, State of Michigan, on October 20, 1967. The judgement of annulment states that the marriage ceremony entered into by the respondent and his wife was and is a nullity and that the respondent and his wife were never legally married.

The District Director at Detroit, Michigan charges in his notice of January 3, 1968 that the respondent was ineligible to receive the adjustment of status accorded him on April 21, 1967 in that his adjustment was obtained on the basis of a marriage entered into solely for the purpose of evading the immigration laws. The respondent was accorded a hearing in rescission proceedings on April 3, 1968. Counsel, in behalf of the respondent, acknowledges the truth of the first 11 factual statements contained in the District Director's notice of January 3, 1968 and admitted in evidence as Exhibit 1. Counsel denies that the respondent's marriage to his former wife, Sharon Florence, was for the purpose of evading the immigration laws as charged in Allegations 12 and 13 of the District Director's notice of January 3, 1968.

The respondent testified that he separated from his wife about 10 days prior to receiving his alien registration card (p. 61) which was mailed to the respondent on April 27, 1967. When questioned as to what prompted him to leave the apartment he shared with his wife, the respondent replied that his departure was "related to the circumstances of my seeing the people in the house" (p. 61), referring to his prior testimony that on one occasion he came home and found his wife with two men and another girl; that his wife instructed him not to enter the apartment; and that he was threatened by one of the men (p. 58).

The respondent's wife testified that she married the respondent in good faith; that after the respondent received his alien registration card, his attitude toward her changed (p. 28); that he "packed his clothes and left" soon after receiving the card (p. 28); that after receiving his "green card" (I-151), the respondent told her that he married only to stay in the United States; and that "God told him to find a girl and marry her so that he could get his 'green card' but to pick a bad one" (pp. 48-51).

The respondent maintains that the failure of his marriage is chargeable to his wife's infidelity. He testified that he has witnesses who "have seen it"; that "I have seen her with a man in the apartment . . .

831

also with men in the car . . . these same men also threatened me" (p. 67). None of the witnesses to the alleged infidelity of the respondent's wife testified during the hearing. When questioned as to why he permitted his wife to proceed with the annulment counterclaim uncontested inasmuch as he filed the original divorce proceeding, the respondent testified "it was because of my fear of her . . . I didn't care at that point" since he was contemplating returning to Iraq (pp. 64–65).

We find much of the respondent's testimony incredible. He has offered no proof that his wife was unfaithful to him. His testimony with regard to threats against his life by men interested in his wife because he filed for a divorce is unrealistic in light of the fact that his wife counterclaimed for an annulment proceeding. Furthermore, the annulment of the marriage was granted on the basis of the respondent having entered into the marriage solely to obtain a benefit under the immigration laws (Ex. 4).

Counsel challenges the admissibility of the testimony of the respondent's wife. He maintains that her testimony is privileged and cannot be used against the respondent; and that absent this testimony, the Government has not met the burden of establishing by clear, unequivocal, and convincing evidence that the respondent was not in fact eligible to receive an adjustment of his status.

It is a generally acceptable rule that a termination of the marriage removes any bar of incompetency on the part of the former wife except for confidential communications between the spouses during the existence of the marital relationship. *Pereira* v. *United States*, 347 U.S. 1, 98 L. Ed. 435. The Supreme Court has also held that where there is a prima facie showing that the marriage relationship was a sham and without substance, confidential communications between the spouses during the existence of the marital relationship are admissible. *Lutwak* v. *United States*, 344 U.S. 604, 97 L. Ed. 593 (1953).

The fact that the respondent's former wife obtained an annulment of her marriage to the respondent on the ground that "he had no intention of keeping his marriage vows but did enter into the marriage for the sole reason of obtaining a permanent residence visa which would permit him to live in the United States and for which purpose he needed the assistance of this defendant (respondent's former wife) so that he could claim marriage to an American citizen" while not conclusive,[1] nevertheless, is prima facie evidence that the marriage was a sham for immigration purposes. Furthermore, the prima facie

---

[1] This Board has held that the relation back theory of an annulment decree is not to be followed blindly where to do so would result in an injustice to an innocent respondent. *Matter of B——*, 3 I. & N. Dec. 102, BIA, 1947.

showing of a sham marriage has support in the fact that the respond-
ent permitted a default judgment in the annulment counterclaim
although he had originally filed a divorce proceeding. Accordingly,
we rule that the testimony of the respondent's wife concerning con-
fidential communications during the existence of the marriage is not
privileged under the circumstances of this particular case.

We must next determine whether the Service has established by
clear, unequivocal and convincing evidence that the respondent was
ineligible for adjustment of status under Section 245 because his sup-
porting marriage was a sham and entered into to circumvent the
immigration laws. Cf., *Waziri* v. *Immigration and Naturalization
Service*, 392 F. 2d 129 (C.A. 9, January 1968). A determination of
whether there is clear, unequivocal and convincing evidence that the
respondent's marriage was entered into as a sham solely for the purpose
of circumventing the immigration laws resolves itself into a determina-
tion of whether the testimony of the respondent's former wife is
worthy of belief. Credibility involves more than demeanor. It appre-
hends the overall evaluation of testimony in light of its rationality or
internal consistency and the manner in which it hangs together with
other evidence. *Carbo* v. *United States*, 314 F. 2d 718, 749 (C.A. 9,
1963).

We have held that in a deportation proceeding there must be an
evaluation and a weighing of all the evidence and a finding made with
regard to its credibility before the test for burden of proof as set
forth in *Woodby* v. *Immigration and Naturalization Service* [2] (385
U.S. 276) comes into play. Cf., *Matter of Lugo-Guadiana*, Int. Dec.
No. 1861, BIA, May 16, 1968. The *Waziri* case (*supra*) imposes the
same test for a rescission proceeding.

An overall evaluation of the testimony of the respondent's wife when
compared with some of the irrational testimony of the respondent
concerning threats to his life, his failure to prosecute the divorce
proceeding filed by him, his testimony that his failure was due to fear
of his wife, and his failure to introduce evidence of his wife's alleged
immorality although he claimed that there were witnesses which could
establish her immoral character leads us to conclude that her testimony
is more credible than that of the respondent. Based upon this finding,

---

[2] The Supreme Court held that the test for burden of proof in a deportation
proceeding is as follows:

> No deportation order may be entered unless it is found by clear, unequivocal
> and convincing evidence that the facts alleged as grounds for deportation are
> true.

we conclude that there is clear, unequivocal and convincing evidence that the respondent was ineligible for adjustment of status on April 21, 1967 because his marriage to a United States citizen was a sham entered into by him for the purpose of circumventing the immigration laws. The appeal will be dismissed.

**ORDER:** It is directed that the appeal be and the same is hereby dismissed.