## MATTER OF SAMEDI

### In Section 246 Proceedings

### A–11186335

*Decided by Board March 19, 1974*

Where respondent's marriage to a United States citizen, which served as a basis for visa availability for adjustment of status under section 245 of the Immigration and Nationality Act, as amended, was subsequently annulled in California, adjustment of status is rescinded under section 246 of the Act notwithstanding the fraud for which the marriage was annulled was unrelated to the immigration laws, since, under California law, the annulment decree renders the marriage void *ab initio*, irrespective of the ground of annulment.

ON BEHALF OF RESPONDENT:   Seymour Mandel, Esquire
3440 Wilshire Boulevard, #608
Los Angeles, California 90010

This is an appeal from the immigration judge's order of November 4, 1970, rescinding the adjustment of status which had been granted the respondent on April 24, 1969 pursuant to the provisions of section 245 of the Immigration and Nationality Act. The respondent obtained visa availability as an immediate relative, pursuant to section 201(b) of the Immigration and Nationality Act, as the spouse of a United States citizen. The appeal will be dismissed.

The record relates to a 36-year-old unmarried male alien, a native and citizen of Iran. The marriage which entitled him to immediate relative status was annulled in California on October 3, 1969. The annulment action was brought by his wife on the ground of his fraud in representing falsely that he would have children with her. He defaulted in the action.

In California, judgments of annulment relate back to the date of the marriage and constitute a finding that no marriage ever existed, irrespective of whether they be voidable or void marriages, *Matter of V—*, 6 I. & N. Dec. 153 (BIA 1954). Counsel seeks to distinguish the annulment in *Matter of V—*, supra, on the ground that the fraud there involved related to the immigration laws and was a fraud on the United States Government, whereas the fraud

for which the respondent's marriage was annulled (refusal to have children) was unrelated to the immigration laws and was upon his spouse only.

We see no basis for distinguishing *Matter of V—, supra,* on the grounds suggested. The relation-back doctrine applies to all annulments in California, irrespective of the ground. The result of the decree is a judicial determination that no marriage ever existed. Because the respondent's status was based on a marriage which has been decreed never to have existed, the respondent was not in fact eligible for the adjustment of status which he was granted. Accordingly, the immigration judge was correct.

**ORDER:** The appeal is dismissed.

**Maurice A. Roberts, Chairman, Dissenting:**

I respectfully dissent from the decision of the Board. I would reverse and remand for further proceedings.

The facts of record are not in substantial dispute. The respondent is a 36-year-old alien, a native and citizen of Iran, who was admitted to the United States on August 31, 1960 as a nonimmigrant student and remained longer than permitted. On April 12, 1968, during the pendency of deportation proceedings against him, he married Patty Gale Terry, a United States citizen, on whose visa petition he was accorded immediate relative status on October 17, 1968 under section 201(b) of the Immigration and Nationality Act. On April 24, 1969, the immigration judge granted respondent's application for adjustment of status under section 245 of the Act. His wife thereafter filed a complaint for annulment in a California court, alleging that the marriage had been induced by the respondent's fraudulent concealment of his intention not to have children. A default judgment of annulment was entered by the court on October 3, 1969. Rescission proceedings under section 246 of the Act were initiated on March 30, 1970 by the filing of a notice of intention to rescind, based on a series of factual allegations (Ex. 1). Respondent contested the action and demanded a hearing.

At the hearing, the Service relied exclusively on the record of the annulment to prove its charge that the respondent was not in fact eligible for the section 245 adjustment. Counsel for the respondent sought a continuance in order to determine what evidence to present. The immigration judge denied the continuance, concluding that under *Matter of V—,* 6 I. & N. Dec. 153 (BIA 1954), the California annulment decree made out a case which could not be challenged by evidence. In his order before us on

appeal, the immigration judge held that under Califronia law the annulment decree rendered the marriage void ab initio, thereby retroactively undermining the visa petition approval based on that marriage and rendering the respondent ineligible for a visa and hence ineligible for section 245 adjustment. Rescission was ordered. The Board today endorses that action, relying on the rationale of *Matter of V—*, supra. In my view, that decision is distinguishable and does not compel the result reached by the Board.

A rescission order under section 246 divests the alien of his previously granted status as a lawful permanent resident and paves the way for his deportation if he does not depart from this country. To support rescission, the administrative fact findings must be based on evidence which is clear, convincing and unequivocal, *Waziri v. INS*, 392 F. 2d 55 (C.A. 9, 1968); *Rodriques v. INS*, 389 F.2d 129 (C.A. 3, 1968); *Yaldo v. INS*, 424 F.2d 501 (C.A. 6, 1970). By analogy to the rule of construction laid down for deportation statutes, section 246 should be narrowly construed. "[S]ince the stakes are considerable for the individual, we will not assume that Congress meant to trench on his freedom beyond that which is required by the narrowest of several possible meanings of the words used." *Fong Haw Tan v. Phelan*, 333 U.S. 6 at p. 10 (1948).

*Matter of V—*, supra, was not a rescission case. It arose under section 3 of the Gigolo Act of May 14, 1937, which provided for the deportation of "any alien who at any time after entering the United Sates is found to have secured either a nonquota or preference-quota visa through fraud, by contracting a marriage which, subsequent to entry into the United States, has been judicially annulled retroactively to date of marriage." The question there presented was whether the California annulment had such retroactive effect. We held that it had.[1] The statute there involved was geared, in terms, to a marriage "judicially annulled retroactively to date of marriage." The rescission statute now confronting us contains no such provision. *Matter of V—*, supra, is inapposite to the present case, in my view.

It is interesting to note that the 1937 Gigolo Act's counterpart in the present Act contains no similar provision. Under section 241(c)(1) of the present Act, a judicial annulment or divorce within two years after entry on documents based on marriage within the prior two years creates merely a rebuttable presumption of fraud, which leaves the way open for the alien to show that the marrige was not in fact "contracted for the purpose of evading any

---

[1] A contrary view was expressed in *Ciani v. Adkins*, 126 F. Supp. 828 (N.D. Texas 1954).

provisions of the immigration laws." Had the respondent obtained a visa, rather than section 245 adjustment, on the basis of his marriage to Patty Gale Terry, her annulment decree would not have had conclusive effect. Section 241(c) is designed to deal specifically with immigration status obtained by fraudulent marriages contracted for the purpose of evading the provisions of our immigration laws. In applying the provisions of section 246, which are general in nature, we should not assume that Congress intended an annulment decree to have conclusive effect beyond that which it would have in the provisions of section 241(c), which were specifically tailored to deal with sham immigration marriages.

Even taken at face value, the annulment decree entered against the respondent does not make out a fraud against the United States. At most, it makes out a case of fraud against Patty Gale Terry. Insofar as concerns the United States, there is nothing to indicate that respondent's marriage to Miss Terry was a sham, entered into without marital intent for the purpose of evading our immigration laws. There is nothing in this record to show that on April 24, 1969, when respondent's status was adjusted under section 245, he "was not *in fact* eligible for such adjustment of status" within the meaning of section 246 (emphasis supplied). Quite the contrary, he was then clearly in fact married to Miss Terry and eligible for adjustment of status. The most that can be said is that he was not then "in law" eligible for such adjustment. That conclusion can be reached only by resort to the legal fiction of "relation back" which would render the marriage void *ab initio*. In my view, we should not indulge in that fiction here.

While it may be true, as we concluded in *Matter of V—*, supra, that in California an annulment decree has such retroactive effect, the same cannot be said with respect to similar judgments in other states. See *Matter of M—*, 3 I. & N. Dec. 25 (BIA 1947) (New York); *Matter of B—*, 3 I. & N. Dec. 102 (BIA 1947) (New York); *Matter of T—*, 3 I. & N. Dec. 528 (BIA 1949) (Texas); *Matter of R—*, 4 I. & N. Dec. 345 (Central Office 1951) (District of Columbia).

Section 246, which is restrictive of the rights of resident aliens, should be narrowly construed. Rescission thereunder should not be made to depend on the vagaries of the laws of the different states with respect to whether or not an annulment decree makes the marriage void *ab initio*. Cf. *Matter of A—F—*, 8 I. & N. Dec. 429, 446 (A.G. 1959).

It seems to me that the Board's decision in this case is inconsistent with the position it announced in *Matter of Yaldo*, 12 I. & N. Dec. 830 (BIA 1968), affirmed *Yaldo* v. *INS*, 424 F.2d 501 (C.A. 6, 1970). In that case, the alien's wife had obtained an annulment on

charges that he married her without marital intent but solely to obtain permanent residence. At the rescission proceedings under section 246, the Service did not rely exclusively on the annulment decree but also presented the testimony of the former wife. In sustaining the rescission order, we gave *prima facie* rather than conclusive effect to the annulment decree, pointing out (footnote 1) that "This Board has held that the relation back theory of an annulment decree is not followed blindly where to do so would result in an injustice to an innocent respondent. *Matter of B—*, 3 I. & N. Dec. 102, BIA, 1947."

Here, the Service tried the charge on the theory that the annulment decree was conclusive and it made no effort to prove by other evidence that the marriage was entered into by the respondent in bad faith for the purpose of evading the immigration laws. The immigration judge accepted that theory and refused to afford counsel for respondent an opportunity to present evidence. In my view, the hearing should be reopened and the record remanded to the immigration judge for further hearing, at which both sides would have the opportunity to present evidence as to the bona fides of the marriage. The immigration judge should then make his findings as to whether the respondent was in fact eligible for his section 245 adjustment, without giving the annulment decree conclusive effect as voiding the marriage *ab initio*.

**Warren R. Torrington, Member, Concurring:**

The dissenting opinion requires a few comments.

Section 241(c)(1) of the Immigration and Nationality Act, to which the dissenting opinion so extensively refers, is not pertinent. It deals with the procurement of visas or other documentation by fraud, an issue not involved in this case. The comparisons attempted in the dissenting opinion are, at best, interesting speculations.

The validity of a marriage does indeed depend on the laws of the particular jurisdiction. That fact does not make the decision vagarious or freakish. There is no federal law of marriage, divorce or annulment in the United States.

*Matter of Yaldo*, 12 I. & N. Dec. 830 (BIA 1968), cited in the dissenting opinion, is inapposite. There the issues were whether it had been proper to permit the ex-wife, a party to a sham marriage, to testify to confidential communications made during the course of the marriage, and whether the government had sustained its burden of proof. *Matter of B—*, 3 I. & N. Dec. 102 (BIA 1947) which had been mentioned in a footnote, in *Matter of Yaldo, supra*, had dealt with a special, sympathetic situation, and had misinterpreted the law of New York.

I concur in the dismissal of the appeal.