**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ELIM CHURCH OF GOD, Washington State Non-Profit Corporation; ROMEO FULGA, *Plaintiffs-Appellants*, | No. 12-35029 |
| | D.C. No. 2:10-cv-01001-RSM |
| v. | |
| SETH D. HARRIS, Acting Secretary of the United States Department of Labor;* ALEJANDRO MAYORKAS, Director of United States Citizenship and Immigration Services; UNITED STATES OF AMERICA, *Defendants-Appellees*. | OPINION |

Appeal from the United States District Court
for the Western District of Washington
Ricardo S. Martinez, District Judge, Presiding

Argued and Submitted
May 9, 2013—Seattle, Washington

---

* Acting Secretary of Labor Seth D. Harris is substituted for his predecessor, Hilda L. Solis, pursuant to Federal Rule of Appellate Procedure 43(c)(2).

Filed July 10, 2013

Before: Sidney R. Thomas and Jacqueline H. Nguyen, Circuit Judges, and Raymond J. Dearie, Senior District Judge.[**]

Opinion by Judge Thomas

## SUMMARY[***]

### Immigration

The panel affirmed the district court's order granting summary judgment in favor of the Department of Labor and the United States Citizenship and Immigration Service, in Elim Church of God's action challenging the government's denial of an application for labor certification the Church filed on behalf of a youth pastor.

The panel held that the Department of Labor's enforcement of a new regulation providing that the labor certification, valid indefinitely when issued to the Church, now expired 180 days after the new regulation became final, did not constitute an impermissible retroactive rule. The panel held that publication of the proposed and final rules in the Federal Register afforded adequate notice of the revision,

[**] The Honorable Raymond J. Dearie, Senior District Judge for the U.S. District Court for the Eastern District of New York, sitting by designation.

[***] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

and that actual notice was not required. The panel also held that the regulation's text did not preclude the government from setting the expiration date.

**COUNSEL**

Steven P. Recor, James F. Pleasants (argued), Bellevue, Washington, for Plaintiffs-Appellants.

Stuart F. Delery, Acting Assistant Attorney General, Civil Division, Elizabeth J. Stevens, Assistant Director, District Court Section, Office of Immigration Litigation, Aram A. Gavoor (argued), Trial Attorney, District Court Section, Office of Immigration Litigation, U.S. Department of Justice, Washington, D.C., for Defendants-Appellees.

**OPINION**

THOMAS, Circuit Judge:

Sometimes, as Delmore Schwartz and Tolian Soran have observed, "time is the fire in which we burn." The Elim Church of God wanted to employ Romeo Fulga, who was present in the United States on a student visa, as a youth pastor. However, in dreams begin responsibilities and, in order to work at the Church, Fulga was required to obtain an employment-based immigrant visa. As a first step, the Church applied for and received a labor certification from the Department of Labor that was valid indefinitely when issued. Unfortunately, the Church did not immediately proceed with the subsequent steps for Fulga to obtain an employment visa. In the interim, the Department of Labor issued new

regulations providing that a labor certification expired after 180 days unless a visa application was filed or, in the case of labor certification holders like the Church, 180 days after the regulation became final. The Church did not act until well after that period. When it did finally act, the Church discovered that its certification had expired.

The Church contends that it was entitled to personal notice and that the regulation had an impermissible retroactive effect. However, we agree with the district court that publication of the proposed and final rules in the Federal Register afforded adequate notice of the revision, and that the regulation was not impermissibly retroactive.

# I

Our unfortunate prospective pastor, Romeo Fulga, is a native and citizen of Romania who came to the United States in 1991 on a student visa. After transferring schools several times, Fulga eventually settled in Bellevue, Washington. In 2000, Fulga began attending Elim Church of God in Bellevue and started volunteering at the Church with the hope of eventually becoming a pastor. Soon after, church officials started the process of employing Fulga as a youth pastor.

The first step in the three-step process to obtain an employment-based immigrant visa is to apply for a labor certification from the United States Department of Labor. The Department must certify that there are not sufficient American workers to perform the work and that employing an alien will not adversely affect the wages and working conditions of American workers. 8 U.S.C. § 1182(a)(5)(A)(I). The Church submitted an application for a labor certification on Fulga's behalf. The

Department approved the application, and the Church received the labor certification dated July 1, 2002.

Once a labor certification is approved, the employer must file an Immigrant Petition for Alien Worker, known as a Form I-140, so that United States Citizenship and Immigration Services (USCIS) can classify the worker in the appropriate preference category.[1]  Fulga and church officials filled out a Form I-140 and provided supporting documentation to their attorney.  However, their attorney never filed the I-140 petition.  Fulga and the Church then hired a new attorney, who also never acted on their petition.  Finally, in late 2008, Fulga and the Church hired their current attorney, who informed them that the odds were against them and the situation grim because USCIS would probably deny the Church's I-140 petition due to an intervening change in the regulations.

When the Department approved the Church's labor certification in 2002, the applicable regulation provided, "Except as provided in paragraph (d) of this section, a labor certification is valid indefinitely."  20 C.F.R. § 656.30(a) (2002).[2]  Thus, until 2006, a granted labor certification existed in a state unaffected by time.

---

[1] The third step in the process is for the alien to adjust his or her status or to obtain an immigrant visa.  Once USCIS has approved the I-140 petition and the alien's priority date becomes current, the alien can adjust his or her status by filing the appropriate form with USCIS.

[2] Paragraph (d) provides that labor certifications obtained by "fraud or willful misrepresentation" are subject to "invalidation."  20 C.F.R. § 656.30(d).

But what is given by the government can sometimes be taken away and, in 2006, the status of labor certifications unbounded by time was disrupted. Prompted by circumstances fed by improper use of labor certifications, the Department published a notice of proposed rulemaking detailing a potential change to the regulation designed in part to address an emerging black market for approved labor certifications. Labor Certification for the Permanent Employment of Aliens in the United States, 71 Fed. Reg. 7656, 7657–58 (proposed Feb. 13, 2006) (codified as amended at 20 C.F.R. pt. 656). The notice stated that because the Department "has traditionally allowed employers to substitute an alien named on a pending or approved labor certification with another prospective alien employee," and because "labor certifications are valid indefinitely," labor certifications had become "a commodity which can be sold by unscrupulous employers, attorneys, and agents to those seeking a 'green card.'" *Id.* at 7657. The proposed rule would prohibit substitution and provide that a certification would expire if not filed with an I-140 petition within 45 days of the Department's approval of the certification. *Id.* at 7663. Labor certifications that were already approved would expire "if not filed in support of a petition" within 45 days of the effective date of the final rule. *Id.*

On May 17, 2007, the Department published its final rule. *See* Labor Certification for the Permanent Employment of Aliens in the United States, 72 Fed. Reg. 27,904 (May 17, 2007) (codified at 20 C.F.R. pt. 656). The final rule amended 20 C.F.R. § 656.30 to provide that a labor certification expires if not filed within 180 days of the approval, rather than the 45 days in the proposed rule. 72 Fed. Reg. at 27,946. The Department stated that limiting the period of validity of a certification "more closely adheres" to the statutory text

requiring the determination about the availability of and effects on American workers "to be made at the time of the application for admission" than would an indefinite period of validity. *Id.* at 27,924. Labor certifications approved before July 16, 2007 (the effective date of the rule) would "expire[] if not filed in support of a Form I-140 petition with the Department of Homeland Security within 180 calendar days of July 16, 2007." *Id.* at 27,946; 20 C.F.R. § 656.30(b)(2) (2007). Thus, as of July 16, 2007, time began running out on the Church's labor certification, with the application process left unfinished.

A year and a half after the regulation's effective date, on January 30, 2009, the Church filed an I-140 petition on Fulga's behalf, which USCIS rejected. Fulga and the Church then sued the Department and USCIS, alleging that enforcing the 180-day deadline without providing actual notice constituted an impermissible retroactive rule.

On cross-motions for summary judgment, the district court granted summary judgment for the government defendants. The court held that the regulation's text did not preclude the government from setting an expiration date. Furthermore, it held that publication of the proposed and final rules in the Federal Register afforded the plaintiffs "legally sufficient" notice.

## II

### A

Whether a regulation may be applied retroactively is a question of law that we review de novo. *Sinotes-Cruz v. Gonzales*, 468 F.3d 1190, 1194 (9th Cir. 2006). We begin

with the fundamental principle that "[r]etroactivity is not favored in the law." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). Therefore, "administrative rules will not be construed to have retroactive effect unless their language requires this result." *Id.* We use a two-step process to determine whether a statute or rule should apply retroactively. First, we ask whether there is a "clear indication from Congress" that a law should apply retroactively. *Hernandez de Anderson v. Gonzales*, 497 F.3d 927, 935 (9th Cir. 2007). "When, as here, an administrative rule is at issue, the inquiry is two-fold: whether Congress has expressly conferred power on the agency to promulgate rules with retroactive effect and, if so, whether the agency clearly intended for the rule to have retroactive effect." *Durable Mfg. Co. v. U.S. Dep't of Labor*, 578 F.3d 497, 503 (7th Cir. 2009); *see also Bowen*, 488 U.S. at 208–15 (holding that the Medicare Act did not grant agency the authority to promulgate retroactive cost limits); *Mejia v. Gonzales*, 499 F.3d 991, 997 (9th Cir. 2007) (holding that regulation did not clearly state that it applied retroactively).

If Congress has not granted the authority to promulgate retroactive rules, we then assess "whether application of the regulation would have a retroactive effect." *Mejia*, 499 F.3d at 997. If so, we do not apply the regulation to the plaintiffs because we presume that, absent a "clear expression" of congressional intent, Congress intended the regulation to apply only prospectively. *See Camins v. Gonzales*, 500 F.3d 872, 881 (9th Cir. 2007).

In our case, the government properly concedes that Congress did not expressly grant the Department of Labor authority to promulgate retroactive rules of this sort. Therefore, we proceed to the second step of the analysis:

whether the regulation has a retroactive effect and the Church's labor certification can be restored to its prior state.

A rule that "'takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past, must be deemed retrospective.'" *Landgraf v. USI Film Prods., Inc.*, 511 U.S. 244, 269 (1994) (quoting *Soc'y for Propagation of the Gospel v. Wheeler*, 22 F. Cas. 756, 767 (Story, Circuit Justice, D.N.H. 1814)). A "statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment, or upsets expectations based in prior law." *Id.* (internal citation omitted); *see also Bowen*, 488 U.S. at 219–20 (Scalia, J., concurring). "Rather, the court must ask whether the new provision attaches new legal consequences to events completed before its enactment." *Landgraf*, 511 U.S. at 269–70. In making this determination, courts rely on their "sound instincts," and "familiar considerations of fair notice, reasonable reliance, and settled expectations offer sound guidance." *Id.* (internal quotation marks, citation and alterations omitted).

Plaintiffs concede that the Department could impose an expiration date for labor certifications that had already been issued, but argue that the Department could do so only if it provided actual notice to those who received certifications under the prior regulation. Therefore, our analysis focuses on whether the Department provided "fair notice" of the change in regulations.

Typically, publication of a document in the Federal Register is "sufficient to give notice of the contents of the document to a person subject to or affected by it." 44 U.S.C.

§ 1507; *see also United States v. Wilhoit*, 920 F.2d 9, 10 (9th Cir. 1990) ("Congress has provided that proper publication in the Federal Register shall act as constructive notice to all of those affected by the regulation in question."); *Friends of Sierra R.R., Inc. v. I.C.C.*, 881 F.2d 663, 667-68 (9th Cir. 1989) ("Publication in the Federal Register is legally sufficient notice to all interested or affected persons regardless of actual knowledge or hardship resulting from ignorance."). The text of the regulations governing labor certifications contains no suggestion that, contrary to this normal practice, affected parties will receive actual notice of changes to the regulations. The prior regulation's statement that a labor certification was "valid indefinitely," 20 C.F.R. § 656.30(a) (2002), does not address what type of notice the Department would provide if it decided to change the indefinite period of validity, a change that the plaintiffs acknowledge the Department could make.

Nor does another regulation concerning the revocation of approved labor certifications support the plaintiffs' argument. That regulation, 20 C.F.R. § 656.32, provides that if the Department seeks to revoke a labor certification, it will send the employer a "Notice of Intent to Revoke" the certification containing "a detailed statement of the grounds for revocation and the time period allowed for the employer's rebuttal." *Id.* § 656.32(b)(1). But this regulation is inapposite because the Department did not seek to revoke the plaintiffs' labor certification; rather, it established an expiration date. Even assuming that § 656.32 establishes an expectation for the type of notice employers will receive if the Department seeks to revoke a labor certification, the regulation does not address what type of notice affected parties would receive if the Department took action other than revoking a certification. Therefore, to the extent the plaintiffs relied upon this

regulation in assuming they would receive actual notice of a change to the certification's period of indefinite validity, such reliance was unreasonable.

It would be incongruous for us to hold that publication in the Federal Register did not afford sufficient notice of this change when the plaintiffs argue that regulations published in the Federal Register (and the Code of Federal Regulations) created a settled expectation or vested interest that they would receive individual notice of the establishment of an expiration date. Furthermore, the text of the statute does not foreclose the establishment of an expiration date for labor certifications. We have recognized that a one-year period of validity is reasonable "in view of the Secretary's duty to advise the Attorney General of the condition of a constantly changing labor market." *Maceren v. District Director, INS*, 509 F.2d 934, 939 (9th Cir. 1974); *see also Durable Mfg.*, 578 F.3d at 502 (holding that 2007 regulation "comports with the textual mandate" of 8 U.S.C. § 1182(a)(5)(A)(i)(I)); 72 Fed. Reg. at 27,924 (finding a limited period of validity "more closely adheres to the letter of the law").

## B

Contrary to the plaintiffs' argument, our decisions in *Maceren* and *Chang v. United States*, 327 F.3d 911 (9th Cir. 2003), do not dictate a different result. In *Maceren*, we held that a Department of Labor regulation imposing a one-year period of validity on labor certifications that previously had been valid indefinitely could not be applied retroactively to the plaintiff. 509 F.2d at 938–41. Maceren had obtained a labor certification, filed the appropriate petition, and was waiting for an immigrant visa number to become available. *Id.* at 937. However, our holding in *Maceren* depended on

that regulation's interaction with a subsequent regulation providing that approval of a preference status would remain valid only so long as the labor certification was valid and unexpired. *Id.* at 938.[3] These two regulations had the effect of immediately invalidating Maceren's preference petition when the later regulation went into effect. *See id.* at 939–40. Thus, the regulations "attache[d] new legal consequences to events completed before [their] enactment." *Landgraf*, 511 U.S. at 270.

Here, the regulation at issue, 20 C.F.R. § 656.30, attached no new legal consequence to any completed transaction because the regulation provided a grace period of 180 days from the effective date of the final rule to file a previously approved labor certification in support of a visa petition. Moreover, in *Maceren*, we reasoned that the government's interpretation of the relationship between the two regulations would produce an absurd result. 509 F.2d at 940–41. In this case, the planets align differently because there are no conflicting regulations that counsel against applying the plain text of § 656.30.

Nor does our decision in *Chang* mandate an actual notice requirement in this case. *Chang* concerned a challenge to the Immigration and Naturalization Service's change of rules governing the requirements to obtain employment-based investor visas. 327 F.3d at 915–16. While the plaintiffs' case was on appeal to this court, Congress enacted a law providing that aliens whose investor visa petitions had been rejected

---

[3] The prior regulation required aliens such as Maceren to renew their preference petition annually, but the one-year period of validity ran from the time the labor certification was issued rather than the date that the preference petition was approved. *Maceren*, 509 F.2d at 937–38.

could file for reconsideration within 60 days, which some of the *Chang* plaintiffs did not do. *Id.* at 918–19. The government argued that those plaintiffs failed to exhaust their administrative remedies. *Id.* at 919. We disagreed, holding that the statute did not apply retroactively because the plaintiffs lacked "fair notice" of this new requirement. *Id.* at 921. "[B]eyond publication of the potentially life-altering one-sentence deadline within a massive appropriations bill, the government . . . took no steps to notify these individuals that they had no more than sixty days to preserve any possibility of judicial review of their case." *Id.* We did "not explore whether providing a longer amount of time, or announcing the new policy more prominently, or individually notifying those to be affected – since the government had that information readily at hand – would have been necessary or sufficient to constitute fair notice." *Id.*

The factors that controlled our decision in *Chang* are not present in this case. In our case, the government did not announce the change in a single sentence in a massive bill, but announced it in two public notices that focused extensively on the establishment of the new expiration date. *See* 71 Fed. Reg. at 7657–60, 7663; 72 Fed. Reg. at 27,905, 27,907, 27,924–25, 27,939–42, 27,946. Moreover, because the new regulation provided 180 days from the effective date of the final rule, it provided a longer notice period than the 60-day deadline at issue in *Chang*. Additionally, applying the 60-day deadline to the *Chang* plaintiffs would have permanently cost them their right to judicial review. Here, while the plaintiffs will permanently lose their claim to this particular labor certification, they can still apply for a new labor certification. Finally, while the *Chang* plaintiffs were already in litigation when Congress enacted the 60-day deadline, here the regulation was promulgated before

litigation (and, indeed, prompted the lawsuit). Therefore, *Chang* does not require that the government provide actual notice in this case.

## III

The plaintiffs also argue that the government should be equitably estopped from enforcing the new regulation. However, equitable estoppel can be applied against the United States only where the government engages in "affirmative misconduct," which is defined "to mean a deliberate lie or a pattern of false promises." *Socop-Gonzalez v. INS*, 272 F.3d 1176, 1184 (9th Cir. 2001) (en banc). The plaintiffs do not identify any affirmative misconduct, and the failure to inform an individual of his or her legal rights does not constitute affirmative misconduct warranting equitable estoppel relief. *Sulit v. Schiltgen*, 213 F.3d 449, 454 (9th Cir. 2000).

## IV

In sum, the regulation establishing an expiration date for labor certifications did not have retroactive effect. The Church's labor certification unfortunately expired when it did not take timely action after the effective date of the new regulation. We therefore affirm the district court's grant of summary judgment for the government.

**AFFIRMED.**