**Norma C. DIRIC, Petitioner,**

**v.**

**IMMIGRATION & NATURALIZATION SERVICE, Respondent.**

**No. 22100.**

United States Court of Appeals
Ninth Circuit.

Sept. 19, 1968.

Rehearing Denied Oct. 30, 1968.

M. L. Borawick (argued), of Parker & Borawick, Midway, Wash., for appellant.

A. E. Stephan (argued), Asst. U. S. Atty., Eugene G. Cushing, U. S. Atty., J. P. Boyd, Director, INS, Seattle, Wash., Ramsey Clark, Atty. Gen. of the U. S. Washington, D. C., S. Suffin, Atty., INS, San Francisco, Cal., for appellee.

Before CHAMBERS, HAMLIN and ELY, Circuit Judges.

HAMLIN, Circuit Judge:

Norma C. Diric, petitioner herein, is a native and citizen of the Philippines. She is not a citizen or a national of the United States. She entered the United States on June 24, 1965, at Anchorage, Alaska, as a non-immigrant student under the provisions of 8 U.S.C. § 1101 (a) (15) and was authorized to remain in the United States until June 15, 1966. She remained beyond that date and deportation proceedings were commenced against her. An order to show cause why she should not be deported was issued on October 11, 1966. On October 20, 1966, a hearing before a special inquiry officer was held. Petitioner was present without counsel.

During this hearing it was clearly established that she had remained in the United States longer than authorized and that she was therefore deportable. During the course of the hearing the petitioner indicated that she did not want to leave the United States and that she would therefore like to make an application for a change of status to that of a permanent resident. The hearing was adjourned to give her an opportunity to file such an application.

When the hearing was resumed, on December 12, 1966, petitioner filed an application for permanent residence under the provisions of 8 U.S.C. § 1255.[1] She also requested that she be considered for voluntary departure under 8 U.S.C. § 1254(e).[2] Petitioner again appeared without counsel.

On December 15, 1966, the special inquiry officer denied petitioner's application for adjustment of status and found her ineligible for voluntary departure. He therefore ordered her de-

1. 8 U.S.C. § 1255(a) provides: "The status of an alien * * * who was inspected and admitted or paroled into the United States may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is approved."

2. 8 U.S.C. § 1254(e). "The Attorney General may, in his discretion, permit any alien under deportation proceedings, * * * to depart voluntarily from the United States at his own expense in lieu of deportation if such alien shall establish to the satisfaction of the Attorney General that he is, and has been, a person of good moral character for at least five years immediately preceding his application for voluntary departure under this subsection."

ported to the Republic of the Philippines. Thereafter petitioner obtained counsel, and moved to reopen the proceedings. On January 23, 1967, the special inquiry officer denied the motion. Petitioner then appealed the order denying this motion to the Board, and on May 5, 1967, the Board ordered the appeal dismissed. It is from the latter order that appeal was taken to this court which has jurisdiction under 8 U.S.C. § 1105a.

The record establishes without question that the petitioner is deportable. In fact, counsel for petitioner does not contend otherwise. Petitioner does argue, however, that the denial of her petitions for relief under section 1255 (adjustment of status) and section 1254(e) (voluntary departure) was based upon improper evidence. We disagree.

During the hearing the trial attorney questioned petitioner concerning certain letters and statements that were in her immigration file. One such letter was from petitioner's aunt who had sponsored her arrival into the United States; another was from her father in the Philippines; and one was from her sister. These letters indicated that there was family disapproval of her conduct in the United States; particularly in regard to an alleged illicit relationship with a married man. Petitioner was asked if the statements contained in these letters were true. She in effect replied that some of them were and others were not. She was also asked whether she desired her aunt and uncle to be brought to the hearing to confront her. She replied that she didn't want to see them any more. The trial attorney also produced an affidavit made by the married man and asked petitioner whether she had any objection to it. She replied that she had no objection. The affidavit described the activities of petitioner and the married man in the United States while she was in his employ; it specifically denied any misconduct on the part of petitioner.

In the course of the investigation by the Immigration and Naturalization Service, petitioner had made a statement to an investigator that while she was in the Philippines, prior to her arrival in the United States, she had been living out of wedlock with a married man, and that about four months before leaving the Philippines she had had an abortion. At the hearing she was asked whether she had made such a statement and whether it was true. She readily admitted that she had made the statement and that it was true.

We do not place our stamp of approval upon the type of procedure used at times by the trial attorney. He should have called witnesses to testify rather than merely ask petitioner if certain statements in their letters were true. Such shortcutting may deny a petitioner the opportunity to confront and cross-examine these witnesses and is therefore improper. If such improper evidence were the basis for the action of the special inquiry officer we would remand the proceedings for further hearing. However, even if all such testimony were disregarded or had not been admitted, there was still ample basis for the denial of discretionary relief.

■ Under section 1255 petitioner must establish among other things that she is eligible for an immigrant visa and that an immigrant visa is immediately available to her. The record shows that she had no preference under the quota for the Republic of the Philippines, that the non-preference portion of the quota to which she was chargeable was over-subscribed and unavailable, and that an immigrant visa was not therefore available. This in itself would prevent her from being statutorily eligible for adjustment of status.

■ Upon her request for voluntary departure, in addition to the requirement that she prove her good moral character, the regulations require that the applicant "has the immediate means to depart voluntarily from the United States." 8 C.F.R. 244.1. Petitioner testified that she had no money to pay her way back to the Philippines.

■ For both types of relief the burden was on the petitioner to establish

a basis for such relief and to bring herself within the requirements of the statute. She produced no such evidence. The record before the special inquiry officer was devoid of any basis upon which favorable action could be taken. As stated in Santos v. Immigration and Naturalization Service, 375 F.2d 262, 264 (9th Cir. 1967), "The extraordinary discretionary relief provided in Section 245 of the Act can only be granted in *meritorious* cases; the *burden* is always upon the alien to establish that his application for such relief *merits favorable consideration.*"

▮ Petitioner also argues that she was denied her right to counsel at the deportation hearing. Such right is granted by 8 U.S.C. § 1252(b) (2).[3] We find no merit to this contention. The record shows that at the first hearing on October 20, 1966, the special inquiry officer advised petitioner that she had a right to be represented by counsel of her own selection and at no expense to the government. She elected to proceed without counsel. Petitioner asserts that there was no similar instruction given at the second hearing on December 12, 1966. However, since the second hearing was merely a continuation of the first, the above instruction and waiver of counsel is clearly applicable. Moreover, the statute only requires that a petitioner be told of her right to counsel vis-a-vis a hearing on the issue of deportability. At the first hearing, the case for deportability was completely made out by the government; the second hearing was only to review petitioner's motions for discretionary relief. Thus, even if the waiver of counsel does not apply to the hearing on December 12, petitioner's right to counsel was not abused.

▮ Petitioner further alleges that it was error for the special inquiry officer to deny her motion to reopen the hearing. This motion was made after petitioner had obtained counsel and stated that she would, at a new hearing, come forward with evidence of her good moral character. The motion, however, made no statement that petitioner would be able to establish that an immigrant visa was immediately available, or that she had obtained funds sufficient to depart voluntarily. She could not, therefore, have benefited from the granting of the motion to reopen the hearing. We accordingly find no error in its denial.

▮ Finally, petitioner argues that her statement and testimony was improperly admitted because she was not given a warning in keeping with Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). This was not a *Miranda*-type of questioning; petitioner was not in custody, and no criminal proceedings were involved. We find nothing in *Miranda* or its progeny which would apply its exclusionary rule to deportation hearings.

A careful examination of the record in this case convinces us that petitioner has not established any basis for the setting aside of the order of deportation.

The order is therefore affirmed.

ELY, Circuit Judge (concurring):

While I agree with the result reached in the majority opinion, I am not satisfied with the majority's gentle reprimand of the Government's trial attorney. I believe that we should have condemned his conduct in stronger terms. It distresses me that an alien must depart our country with the justified impression that the Government of the United States, through an over-zealous advocate, has been unnecessarily unkind, if not abusive.

---

3. 8 U.S.C. § 1252(b) (2) provides that "the alien shall have the privilege of being represented (at no expense to the Government) by such counsel, authorized to practice in such proceedings, as he shall choose * * *."