MATTER OF CARDOSO

In Deportation Proceedings

A-17619853

*Decided by Board April 25, 1969*

An alien admitted to the United States, destined to an existing certified job with the intention of taking up the employment, must be considered as having been lawfully admitted for permanent residence, and where he reports to such employment but declines to take the job for valid reasons not reflecting a lack of good faith, the validity of his admission is not impugned.

CHARGE:

Order: Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Excludable by law existing at time of entry (section 212(a)(14) of the Act, 8 U.S.C. 1182)—coming to perform unskilled labor—no valid labor certification.

ON BEHALF OF RESPONDENT:
Louis J. Perez, Esquire
155 Pleasant Street
Pawtucket, Rhode Island 02860

ON BEHALF OF SERVICE:
Irving A. Appleman, Esquire
Appellate Trial Attorney

On July 31, 1968, the special inquiry officer granted the respondent the privilege of voluntary departure, but provided for his deportation, on the charge contained in the order to show cause, in the event of his failure so to depart. The special inquiry officer then certified the case to this Board for review and final decision. For the reasons set forth below, his decision will be withdrawn and the proceedings terminated.

The record relates to a 28-year-old male alien, a native and national of Portugal, who was admitted to the United States for permanent residence on November 17, 1967. His wife and their infant child, both Portuguese natives and nationals, immigrated with him.

The immigrant visa respondent presented at entry had been issued on the basis of a labor certification showing that he was des-

tined to the Conrad Mfg. Co., Pawtucket, Rhode Island, for employment as a braider tender, eight hours a day, 45 hours a week, at $1.60 per hour. He has, however, never worked for a Conrad Mfg. Co. since his entry.

Less than a week after arrival, respondent went to work for the Joyal and Van Dale Co., Pawtucket, Rhode Island, as a shoelace tipper, at $78 per week. After being thus employed for four weeks, he went to work for the Rhode Island Textile Co., Pawtucket, Rhode Island, as a bobbin machine operator, at $1.70 per hour, and is still so employed. He has presented a labor certification covering this work, which he obtained after the case came forward to this Board.

At the hearing, evidence was presented, which the special inquiry officer believed, that when respondent obtained his labor certification, his visa and admission into the United States, he fully intended to go to work for the Conrad Mfg. Co. and did, in fact, present himself there. He consulted a foreman about a job for his wife [1], as well as for himself. The foreman advised against both of them working in the same place, lest they both become unemployed at the same time if there should be a strike or layoff. As a result, his wife did go to work for the Conrad Mfg. Co., but respondent, acting on the foreman's well intentioned advice, sought and obtained employment elsewhere. He did so, however, only after receiving assurance from the foreman that his job at Conrad's always would be available to him, and it is still obtainable.

The special inquiry officer found that respondent had acted in good faith. Relying, however, on our decision in *Matter of Pfahler*, 12 I. & N. Dec. 114 (1967), the special inquiry officer concluded that since the respondent did not at the time of entry have a valid labor certification for the work into which he later actually entered, he was inadmissible under section 212(a)(14) of the Act and therefore deportable as charged.

Our decision in *Pfahler* does not compel that conclusion. That case presented an *exclusion* situation, in which an alien applicant for admission was found to be coming to a job for which he had no labor certification. The instant respondent, on the other hand, at the time he applied for admission not only had a visa based on a duly issued labor certification, but the certified employment was actually in existence and awaiting him, and he intended in good faith to proceed to it. focusing on the moment of admission, as

---

[1] She did not have a labor certification, but did not need one because she was the spouse of an alien with an approved sixth preference visa.

we must where deportability under section 214(a)(1) of the Act is charged, we cannot find that respondent was at that time barred from entry by the provisions of section 212(a)(14), as alleged.

Section 212(a)(14) was designed to protect American labor. With stated exceptions, aliens coming here to work were to be denied visas and entry if they would displace available American workers or would adversely affect the wages and working conditions of American workers. As originally enacted in 1952, section 212(a)(14) prescribed a negative certification by the Secretary of Labor as a condition of exclusion. This exclusion provision was drastically tightened by the 1965 amendment,[2] which required an affirmative certification, with its underlying clearance procedures, was the mechanism which Congress employed as the means for screening out immigrants whose admission would adversely affect American labor.

Once the intending immigrant successfully passed through the screening procedures and the Secretary of Labor issued him a labor certification, the way was paved for visa-issuance and admission for permanent residence. We can find nothing in the test of section 212(a)(14) or in its legislative history to indicate that the admission of an alien so documented was designed by Congress as a conditional entry, to be convertible into permanent residence only after a stated probationary period.[3] Neither does this provision of the statute, or any other, make such an admission one on condition subsequent, subject to defeasance if the alien does not take up and maintain for a stated period of time the employment he has contracted to perform with the employer to whom he was destined.[4]

Once an alien, such as the respondent, has been admitted, destined to an existing certified job with the intention of taking up the employment, he must be considered as having been lawfully admitted for permanent residence. If he reports to work and accepts the employment, he may still quit after a while because he does not like the work or because he has received a better offer eslewhere.[5] Where he reports to work and then declines to take the job, under circumstances such as those outlined here, we do not see how this can impugn the validity of his admission.

An alien's post-entry failure to take up or continue in the certi-

---

[2] Act of October 3, 1965; 79 Stat. 911.

[3] Cf. section 203(a)(7) of the Act, 8 U.S.C. 1153.

[4] Cf. section 241(c) of the Act, 8 U.S.C. 1251(c).

[5] See *Matter of Marcoux*, 12 I. & N. Dec. 827 (BIA, 1968.

fied employment may, of course, give rise to a suspicion that he never intended to fulfill his employment contract in the first place. Properly pursued, such a suspicion may lead to evidence sufficient to undermine the validity of the labor certification. See 29 CFR 60.5. That is not the situation here. The special inquiry officer has found, quite properly on this record, that the respondent at the time of entry fully intended to take up the certified employment.

ORDER: It is ordered that the special inquiry officer's decision of July 31, 1968 be withdrawn and that the proceedings be and they are hereby terminated.