**YUI SING TSE and Debbie Siu-Mai Tse, Petitioners-Appellants,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent-Appellee.**

No. 77–1075.

United States Court of Appeals, Ninth Circuit.

March 26, 1979.

Robert O. Wells, Jr. (argued), Moriarty, Long, Mikkelborg & Broz, Seattle, Wash., for petitioners-appellants.

Lauren S. Kahn (argued), Dept. of Justice, Washington, D. C., Philip Wilens, Dept. of Justice, Washington, D. C., for respondent-appellee.

Before BROWNING and WALLACE, Circuit Judges, and WATERS *, District Judge.

BROWNING, Circuit Judge:

Petitioner appeals from an order of the Board of Immigration Appeals denying his application for adjustment of status, directing deportation, and granting voluntary departure.[1]

Petitioner was admitted to the United States on a student visa in January, 1971. In March, 1973, on application of a Chinese restaurateur in Vancouver, Washington, the Department of Labor issued an alien employment certification under section 212(a)(14) of the Immigration and Naturalization Act, 8 U.S.C. § 1182(a)(14) (Supp. 1978), authorizing petitioner's employment as a Chinese specialty cook.[2]

Petitioner then applied under section 245 of the Act, 8 U.S.C. § 1255 (Supp.1978), for adjustment of status to that of a permanent resident claiming entitlement to a sixth preference immigrant visa under section 203(a)(6) of the Act, 8 U.S.C. § 1153(a)(6) (Supp.1978). Section 203(a)(6) makes such visas available to persons, "who are capable of performing specified skilled or unskilled labor, not of a temporary or seasonal nature, for which a shortage of employable and willing persons exists in the United States;" provided they have complied with the labor certification requirements of section 212(a)(14).

Petitioner's application for adjustment of status was denied. The Service instituted deportation proceedings. In January, 1974, in the course of these proceedings, petitioner renewed his application for adjustment of status. At a hearing held July 24, 1975, petitioner disclosed that he had applied and been accepted for admission to dental school, and would enroll in the fall. He testified it would require four years to complete dental school, and that he intended to continue working as a full-time Chinese specialty cook to support himself and his family while attending school.

The immigration judge denied petitioner's request for an adjustment of status and ordered petitioner deported. The Board affirmed on the ground that petitioner was ineligible for an adjustment of status because he planned to become a dentist rather than to continue to work as a cook.[3]

■ A petition for adjustment of status raises two issues: whether petitioner is eligible for the relief sought; and, if so, whether relief should be granted as a matter of discretion. In this case the Board decided petitioner was ineligible for relief; no exercise of discretion was involved. The Board's decision did not rest upon resolution

---

* Honorable Laughlin E. Waters, United States District Judge for the Central District of California, sitting by designation.

1. The parties agree that Ms. Tse's status is controlled by that of her husband. References in the opinion to petitioner are to Mr. Yiu Sing Tse.

2. Petitioner began work as a Chinese specialty cook in May, 1973, and continued to be so employed until the present except for a period of physical incapacity resulting from an accidental injury.

3. The immigration judge had rested his decision on the ground that, at the time of the decision, petitioner was employed by a different employer than the one who had obtained the labor certificate upon which petitioner relied. We do not consider this ground since the Board did not rely upon it. *See Barbour v. INS*, 491 F.2d 573, 576–77 (5th Cir. 1974); *Goon Wing Wah v. INS*, 386 F.2d 292, 294 (1st

Cir. 1967); *Chen v. Foley*, 385 F.2d 929, 933 (6th Cir. 1967). We note, however, that there was reason in the record for the Board's failure to rely upon the immigration judge's rationale. It was undisputed that petitioner had accepted the position with the employer to which the certificate related and held it to that employer's satisfaction for several years; that the change to another employer was a matter of convenience arising out of an injury to petitioner; that the certificated job remained open to petitioner; and that at the time of the hearing it was the intention of the petitioner and the certificated employer that petitioner would return to the certificated job prior to or upon the grant of adjustment of status. Board rulings in analogous circumstances cast doubt upon the validity of the immigration judge's ruling that petitioner's labor certification was no longer valid. *See Matter of Klein*, 12 I&N Dec. 819 (1968); *Matter of Cardoso*, 13 I&N Dec. 228 (1969).

of a factual conflict; the facts we have recited are undisputed.[4] The Board held petitioner ineligible as a matter of law because he intended to change his occupation in the future from that identified in the labor certificate upon which his eligibility for a visa was based. The question is one of law: whether the Board applied the appropriate legal standard. *Marino v. INS,* 537 F.2d 686, 690 (2d Cir. 1976). *See Kovac v. INS,* 407 F.2d 102, 104 (9th Cir. 1969); 2 C. Gordon & H. Rosenfield, *Immigration Law and Procedure,* § 8.15 at 8–96 (Rev.ed. 1978).

■ An alien seeking permanent resident status is assimilated to the position of an applicant for entry, *see, e. g., Hamid v. INS,* 538 F.2d 1389 (9th Cir. 1976); *Talanoa v. INS,* 397 F.2d 196, 200 (9th Cir. 1968), and therefore must be eligible for the preference category relied on at the time his application for adjustment of status is acted on. *Cf.* 1 C. Gordon & H. Rosenfield, *supra,* § 3.5j at 3–56. *See also* Immigration & Nationality Act, § 204(e), 8 U.S.C. § 1154(e) (1970); 8 C.F.R. § 205.1 (1977).

Petitioner claimed a sixth preference visa was immediately available to him under section 203(a)(6). The Board held that because petitioner intended to change his occupation from Chinese specialty cook if and when he completed dental school, his petition for a sixth preference visa was no longer valid.[5]

■ Taken together, sections 212(a)(14) and 203(a)(6) are designed to permit aliens capable of performing jobs for which American workers are not available to come to this country, while protecting American workers from the competition of aliens entering the United States to take jobs American workers could fill. *See Maceren v. District Director,* 509 F.2d 934, 936 n.2 (9th Cir. 1974); Gordon & Rosenfield, *supra,*

§§ 2.27g, 2.40(a), at 2–210, 2–289; *Matter of Poulin,* 13 I&N 264, 266 (1969).

■ The second and potentially conflicting interest involved is the interest of an alien granted permanent resident status in the opportunity to earn a living, to improve his economic circumstances, and to engage in common occupations, without unreasonable limitation or invidious discrimination. *Cf.* Gordon & Rosenfield, *supra,* §§ 1.34, 3.6g, at 3–93–4. This interest was reflected in a regulation of the Department of Labor in effect when the Board rendered its decision in this case which provided that "[t]he terms and conditions of the labor certificate shall not be construed as preventing an immigrant properly admitted to the United States from subsequently changing his occupation, job, or area of residence." 29 C.F.R. § 60.5(f) (1976). Addressing the question of an alien's freedom to change occupations, the court in *Castaneda-Gonzalez v. INS,* 183 U.S.App.D.C. 396, 412, 564 F.2d 417, 433 n.36 (1977), noted the previous existence of this regulation and said: "[a]ny other interpretation could raise serious constitutional issues as to the extent to which employment opportunities may be restricted on the basis of alienage."

In the present case, the Board looked solely to whether at the moment of entry the alien intended to change from the certificated employment, and concluded that petitioner was not entitled to preference as an immigrant because his intention at "entry" was to change employment, though only in the distant future and upon a condition that might not be satisfied. The standard applied by the Board was entirely subjective. It was both too narrow and too rigid to accommodate the interests to be protected.

■ It is appropriate to require that the alien intend to occupy the certificated occu-

---

4. If the Board's determination of statutory ineligibility had rested upon resolution of a factual issue, review would be governed by the substantial evidence test. *Lee v. INS,* 541 F.2d 1383, 1384–86 (9th Cir. 1976). *See* 2 Gordon & Rosenfield, *supra,* § 8.14 at 8–94–95.

5. The Board said:

Under C.F.R. 204.4 and section 212(a)(14) of the Act, the intent of the male respondent not to continue as a cook, but to become a dentist, makes him ineligible for adjustment of status. *See Matter of Kim,* 13 I&N Dec. 16 (BIA 1968); *Matter of Pietra,* 13 I&N Dec. 11 (BIA 1968).

pation for a period of time that is reasonable in light both of the interest served by the statute and the interest in freedom to change employment. But to hold, as the Board did in this case, that an alien is not eligible for admission as a preference immigrant when his intention at entry is to engage in the certified employment unless and until he can complete the educational and other requirements for advancement to the profession of dentistry, a period of four years, fails to recognize that both the interest underlying the grant of preference and the interest in freedom of opportunity for self-improvement would be substantially served by petitioner's admission.

The Board's approach is not required either by the statute or by the Board's regulations.

The language of the statute does not bar a test that looks to the underlying interests. Section 212(a)(14) of the Act speaks in terms of labor scarcity and absence of adverse impact on wages and working conditions at the time of certification; nothing in the language bears upon the length of commitment required of the beneficiary. *See Matter of Cardoso, supra*, 13 I&N Dec. at 230. Section 203(a)(6) of the Act limits preference to persons capable of performing labor "not of a temporary or seasonal nature," but the reference is to the nature of the employment itself, which must be permanent in character. *Cf. Matter of Smith*, 12 I&N Dec. 772 (1968). The job for which petitioner was certificated was not "temporary or seasonal"; and the Board did not assert the contrary either in its decision or in brief or argument in this court.

■ As we have suggested, construing the statute to require that the alien intend to remain in the certified employment permanently would raise substantial constitutional problems. *See generally Hampton v. Mow Sun Wong*, 426 U.S. 88, 96 S.Ct. 1895, 48 L.Ed.2d 495 (1976). Moreover, the rule that deportation statutes are to be construed in favor of the alien is "fully applicable" where the question is eligibility for adjustment status rather than deportability. *See Marino v. INS, supra*, 537 F.2d, at

691 & n.5. These considerations dictate that absent a clear requirement that preference petitions be invalidated solely because the alien intends to change occupations at some time in the future, we should not so read the statute.

The pertinent regulation (8 C.F.R. 204.-4(b)), provides that a petition to classify an alien as a sixth preference immigrant

shall remain valid for as long as the supporting labor certification is valid and unexpired, provided there is no change in the respective intentions of the prospective employer and the beneficiary that the beneficiary will be employed by the employer in the capacity indicated in the supporting job offer.

Petitioner's labor certificate was valid and unexpired. The intention of the original employer and petitioner remained that petitioner would be employed in the certified job as a Chinese specialty cook. See note 2. On its face section 204.4(b) does not require that petitioner intend to remain in the certified job forever—that he entertain no intention to change his job or occupation at any time in the future. The regulation requires only that at the time of entry both the employer and the employee intend that the latter will be employed in the job upon which the labor certification is based—a condition satisfied in this case.

The two prior Board decisions cited in support of the ruling in this case are obviously distinguishable. The petitioner in *Matter of La Pietra*, 13 I&N Dec. 11 (1964), did not possess the skills upon which the labor certification was based. The petitioner in *Matter of Kim*, 13 I&N Dec. 16 (1968), was not engaged in the practice of pharmacy for which he sought preference status under section 203(a)(3) of the Act, and he did not intend to engage in this profession at any time in the future.

■ Balancing the interests involved in light of the undisputed facts, it is clear that petitioner is eligible under the statute for adjustment of status. Because the Board has not considered whether adjustment should be granted as a matter of discretion,

the case must be remanded for further proceedings. *See Lee v. INS, supra,* 541 F.2d at 1386.

Reversed and remanded.

WALLACE, Circuit Judge, dissenting:

I respectfully dissent.

While this case presents a complicated situation, its complexity is largely due to the mendacity of the petitioner. To secure his visa, he certified that he was a civil servant and that he desired to come to the United States in order to further his education. To be sure that a prospective student will not be a drain on the labor market, the application form contains the question: "Who will pay for your transportation and expenses?" He responded, "Father." It was based upon this visa application dated November 17, 1970, that the petitioner was allowed originally to come to the United States of America. He did so and apparently began his studies.

Approximately one and a half years after his entry into the United States, he filed an application with the United States Department of Labor in an effort to obtain a labor certificate. This certificate, if validly secured, would allow him to apply for a different visa which would then allow him to work. Under his prior visa, he could not legally do so.

This latter application adequately demonstrates what had actually occurred. In violation of the laws of the United States, he was in fact already working as a Chinese food cook. He did not tell the truth when he stated that his father would support him. In addition, his new application does not claim that he is a civil servant but certifies his occupation as a Chinese food cook, and he lists his prior work experience in that profession. Interestingly, he includes a reference to the Tin Fat Restaurant in Hong Kong where, if he is telling the truth, he would have been a chef at the age of approximately 16 or 17.

An investigation provided conflicting evidence as to whether he was in fact qualified as a Chinese food chef. The hearing officer concluded, after reviewing the evidence and observing the testimony of the petitioner, that he had not met his burden of proof. The substantial change in petitioner's story apparently caused the immigration hearing officer to conclude: "I cannot but marvel at the present record which shows the dextrous changing of testimony to fit prior statements and prior written matters."

Petitioner then requested a rehearing on his application, and at that time asserted a third factual premise upon which he claims he should be given a new status: that he intended to go to dental school and work as a Chinese food cook only during the four years necessary to complete his education. The issue before us emerged when the Board concluded the petitioner was ineligible. The Board held that under 8 C.F.R. § 204.4 (1978) and section 212(a)(14) of the Act, "the intent of the male respondent not to continue as a cook, but to become a dentist, makes him ineligible for adjustment of status."

The majority is correct in concluding that sections 212(a)(14) and 203(a)(6) are "designed to permit aliens capable of performing jobs for which American workers are not available to come to this country, while protecting American workers from the competition of aliens entering the United States to take jobs American workers could fill." The majority, however, goes astray when it attempts to interpose a "second and potentially conflicting interest" which allegedly grants an alien receiving permanent resident status "the opportunity to earn a living, to improve his economic circumstances, and to engage in common occupations, without unreasonable limitation or invidious discrimination." Based upon this assumed second interest, the majority holds that the Board was incorrect in this case. The majority is wrong for two reasons.

First, the authority relied upon by the majority for this "second and potentially conflicting interest" is extremely questionable. One of the sources found by the majority to "reflect" this interest is 29 C.F.R. § 60.5(f) (1976). As the majority acknowledges, that section is no longer the applica-

ble regulation. *See* 20 C.F.R. Part 656 (1978). The new regulations do not contain language comparable to that referred to by the majority here.

The other sources of this second interest are similarly subject to doubt. Thus, the authorities upon which the majority premises its far-reaching doctrine are, in addition to the superseded Code of Federal Regulations section, a *"cf."* citation to a text and a footnote from a sister circuit case. But even this scant authority applies only to persons in circumstances other than those of Tse. The rejected section applies only to an immigrant properly admitted, and in *Castaneda-Gonzalez v. INS*, 183 U.S.App. D.C. 396, 412, 564 F.2d 417, 433 (1977), there was no question raised as to the applicant's good faith entry.

There is a second reason why the majority is wrong. Assuming that an alien securing permanent resident status based upon sections 212(a)(14) and 203(a)(6) may not be required to work forever at the job for which he received a labor certificate, the question before the Board in this case remains unanswered. That question most emphatically is not whether an immigrant alien, once properly admitted, may change jobs. Rather, the question is whether an alien who applies for immigrant status, and who is thus considered as if he were initially entering the country, *see, e. g., ante* (majority opinion) at 834; *Campos v. INS*, 402 F.2d 758, 760 (9th Cir. 1968), may definitely intend, at the time that he makes his application, to change employment from that for which he acquires his labor certificate.

The Board did not forbid an immigrant alien from changing his mind in the future and improving his employment situation. The Board simply held that at the specific time the petitioner submits his application, he must have made a choice to work in the specific area for which he received the work certificate. When the petitioner admits that his desire to do that type of work is merely temporary (i. e., until he can secure some other type of work), he does not qualify.

A case not distinguished by the majority clearly outlines this principle. In *Matter of Poulin*, 13 I. & N. Dec. 264 (1968), the petitioner's labor certificate showed he intended to work as a "weaver learner." Although petitioner worked in this capacity for one day, his admitted intention at the time of entry was to work as a lumberman. The Board ordered deportation because it found that "there is no certification that there were not sufficient workers in the United States able, willing, qualified, and available to do the work the applicant intended to do at the time of his original and present application for admission . . ." *Id.* at 266. The petitioner intended to work as a "weaver learner," but only until he could secure the job he actually wished to hold, that of a lumberman. He must, therefore, secure a labor certificate as a lumberman. The same principle applies here. Although the petitioner intends to work for four years rather than one day, in both cases the intent is, for the foreseeable future, not to work in a particular area, but only to work in that area until the other occupation becomes available.

The wisdom of following *Poulin* is obvious. The protection of the American work force, as underscored by section 212(a)(14), specifically has to do with where an alien will compete in the job market. The ultimate intent of petitioner is not to work as a Chinese food cook but to work as a dentist. Granting him a labor certificate for what is obviously only temporary employment and closing the Board's eyes to his eventual employment desire would merely frustrate the basic purposes of the statute and prevent the Board from performing its statutorily mandated duty of protecting American labor.

Thus, the majority is wrong in principle and wrong because the authority relied upon does not substantiate its contention. I would therefore affirm the Board. However, if the majority position is accepted, I would reluctantly agree that the matter should be remanded to the Board so that it may exercise its discretion. Because of the petitioner's mendacity, the remand appears

to me to be a useless exercise. I agree, however, that we should require it as a matter of appropriate procedure.