815 F.2d 79
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Kourosh MINUI, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 85-3728.
 United States Court of Appeals, Sixth Circuit.
 Feb. 16, 1987.
 
 Before KRUPANSKY and RYAN, Circuit Judges, and HULL, District Judge.*
 PER CURIAM.
 
 
 1
 The alien-petitioner Kourosh Minui ("petitioner"), pro se, sought review of a final order of the Board of Immigration Appeals (the "Board") which affirmed the immigration judge's decision denying the petitioner relief from deportation. The petitioner is a native and citizen of Iran, and was admitted to the United States in New York City on January 1, 1978 as a nonimmigrant student. His I-94 permit authorized him to remain in the U.S. until June 30, 1980. Deportation proceedings were initiated against the petitioner pursuant to an Order to Show Cause issued on October 28, 1980, charging him with remaining in the U.S. beyond the time authorized by 8 U.S.C. Sec. 1251(a)(2) of the Immigration & Nationality Act (the "Act").
 
 
 2
 On November 6, 1980, the petitioner's deportation hearing was conducted. Through counsel, the petitioner denied that he was a deportable alien because he had not remained in the United States beyond the time authorized by his I-94 permit. The immigration judge rejected the argument, and concluded that the exhibits of record clearly demonstrated that the final extension to remain in the United States on the petitioner's visa expired on June 30, 1980. Unable to advance evidence of any extensions beyond the June 30, 1980 deadline, the petitioner asserted that although he had failed to timely file appropriate forms, he had married one Zoe Brown ("Brown"), a United States citizen, which marriage shielded him from deportation. The immigration judge, having accepted the petitioner's claim of marriage as true,[1] continued the proceeding to permit Brown to submit an I-130 Immediate Relative Visa Petition on the petitioner's behalf.[2] Brown filed the I-130 petition with the INS on November 18, 1980, at which time the deportation hearing reconvened. Conditioned upon INS approval of the I-130 petition, the immigration judge instructed the petitioner to file with the INS an I-485 application for Adjustment of Status to that of a permanent resident alien.[3] The case was again continued pending an INS investigation into the validity of the petitioner's marriage and approval of the I-130 petition.
 
 
 3
 The deportation hearing reconvened on August 7, 1984, and the immigration judge was advised that the I-130 petition had not been approved because the completion of the I-130 investigation had been frustrated by the petitioner's failure to present himself for interview on four successive scheduled occasions. Moreover, upon inquiry by the immigration judge, both the petitioner and his counsel affirmatively asserted that the petitioner had no intention of filing an application for asylum and withholding of deportation. The immigration judge thereupon proceeded to consider the petitioner's petition for Termination of Deportation, and in the alternative, for Voluntary Departure, which were the only pending pleadings before him. Accordingly, on August 10, 1984, the immigration judge issued a memorandum wherein he ordered that: (1) the issue of asylum and withholding of deportation was moot because the petitioner failed to file the appropriate application for such relief, and because the petitioner denounced in open court any desire to pursue that avenue of relief; (2) the motion for termination of the deportation proceedings based on the petitioner's marriage to Brown be denied because the petitioner was a deportable alien, prior to his marriage, as an overstay in violation of 8 U.S.C. Sec. 1251(a)(2);[4] and (3) the petitioner would be permitted voluntary departure within 90 days.
 
 
 4
 On August 17, 1984, the petitioner for the first time filed his I-485 application for Adjustment of Status. On August 22, 1984, he lodged his appeal with the Board of Immigration Appeals charging error to the immigration judge's order denying both asylum and withholding of deportation, and termination of the deportation proceedings. On April 9, 1985, the Board affirmed the immigration judge's decision. Jurisdiction was properly conferred upon this court pursuant to 8 U.S.C. Sec. 1105a.
 
 
 5
 The standard of review on appeal to this court is whether the Board's decision was predicated on the correct legal standards and supported by substantial evidence in the record taken in its entirety. See Yousif v. I.N.S., 794 F.2d 236, 241-242 (6th Cir.1986). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).
 
 
 6
 The petitioner's sole assignment of error charged on appeal to this court sought to estop the INS from denying the validity of his I-485 application for Adjustment of Status based on his marriage to Brown, or alternatively that the INS should have reopened the case to permit him to assert a request for asylum.
 
 
 7
 The Supreme Court has recently enunciated that the rigid standard imposed upon a petitioner asserting estoppel in a deportation proceeding is proof that the government had been guilty of "affirmative misconduct" during the prosecution of the action. I.N.S. v. Miranda, 459 U.S. 14, 103 S.Ct. 281, 74 L.Ed.2d 12 (1982). See also Rogers v. Tennessee Valley Authority, 692 F.2d 35 (6th Cir.1982) (adopting the Supreme Court's "affirmative misconduct" standard in an estoppel action against the government). The pronouncements in Miranda are dispositive of the issue joined in the case at bar. Here, the INS did not rule on the I-130 visa petition because the petitioner failed to appear at any of the four scheduled interviews. Moreover, the immigration judge continued the deportation hearing on numerous occasions spanning a period of four years to accomodate the petitioner and accord him the opportunity to file his I-485 application for status adjustment, which amnesty was ignored until after the immigration judge issued his final decision. Obviously, the INS did not engage in any affirmative misconduct and the petitioner's argument must therefore be rejected. See also Jaa v. I.N.S., 779 F.2d 569 (9th Cir.1986) (58 month delay in processing a visa petition is not "affirmative misconduct" which will estop the government).
 
 
 8
 Additionally, the Board correctly applied the legal tenets embodied in Secs. 1151(b) and 1255(a) of the Act. Under Sec. 1255, the petitioner was required to establish that he had filed an application for status adjustment. Clearly, he had not done so prior to the immigration judge's decree. Further, Sec. 1255 required the petitioner to prove that he was eligible for an immigrant visa and that an immigrant visa was immediately available to him in order to have qualified for an adjustment of status. The petitioner attempted to satisfy the conditions of Sec. 1255 by the I-130 petition asserting his marriage to Brown under the prescriptions of Sec. 1151(b). The record disclosed, however, that due to the petitioner's persistent failure to appear for the scheduled interviews which aborted the I-130 investigation, the petition had not been approved and an immediate nonimmigrant petition was therefore not forthcoming. Thus, just as the Supreme Court concluded in Miranda, an adjustment of status could not have been obtained. See also Diric v. I.N.S., 400 F.2d 658, 660 (9th Cir.1968), cert. denied, 394 U.S. 1015, 89 S.Ct. 1633, 23 L.Ed.2d 41 (1969). Accordingly, the Board did not err in concluding that there was no legal basis upon which to grant an adjustment of status because none of the prerequisite conditions of Sec. 1255(a) had been satisfied.
 
 
 9
 This court has considered the petitioner's remaining contentions and concludes that they are without merit. Accordingly, the judgment of the Board of Immigration Appeals is AFFIRMED.
 
 
 
 *
 Hon. Thomas G. Hull, Chief Judge, United States District Court for the Eastern District of Tennessee, sitting by designation
 
 
 [1]
 The record disclosed that on November 6, 1980, the time of the petitioner's allegation of marriage, he was not in fact married. The asserted marriage did not occur until November 14, 1980
 
 
 [2]
 8 U.S.C. Sec. 1151(b) of the Act provides for the admission of immigrants who are immediate relatives of U.S. citizens. Approval of the I-130 petition was a prerequisite to the filing for an Adjustment of Status in the case at bar because the petitioner had overstayed the time authorized by his I-94 permit. See note 3, infra
 
 
 [3]
 8 U.S.C. Sec. 1255(a) of the Act provides that the status of an alien who was admitted into the U.S. "may be adjusted ... to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed." (emphasis added)
 
 
 [4]
 The petitioner predicated his request for termination of deportation on the assertion that he was married to a U.S. citizen and that the INS had yet to rule on his pending immediate relative visa petition. The immigration judge properly denied the request because a termination of deportation proceedings must result from the non-deportability of the alien in the first instance. Since the petitioner was deportable in the first instance as an overstay, the petitioner's subsequent marriage to Brown was irrelevant on the issue of termination