**Joseph Shoo Hwan KIM,
Plaintiff-Appellant,**

v.

**Edwin MEESE, III, Attorney General
of the United States,
Defendant-Appellee.**

No. 85–6067.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 8, 1986.*

Decided Feb. 24, 1987.

* Case reassigned to present author on October 29, 1986.

Donald L. Ungar, San Francisco, Cal., for plaintiff-appellant.

Ian Fan, Los Angeles, Cal., for defendant-appellee.

Before WALLACE, HUG and NORRIS, Circuit Judges.

WALLACE, Circuit Judge:

Kim appeals from a summary judgment entered by the district court in favor of the government which had rescinded his permanent resident alien status. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

I

Kim, a citizen of the Republic of Korea, was admitted to the United States in 1972 as a nonimmigrant visitor for business. By 1974, he had invested $36,000 in "Home of Gifts," a retail store in Stockton, California. In 1974, Kim applied for an adjustment of status, from nonimmigrant to nonpreference immigrant, based on his status as an investor. Under Immigration and Naturalization Service (INS) regulations in force at that time, an alien was exempt from the INS's normal labor certification requirement, 8 U.S.C. § 1153(a)(7); 8 U.S.C. § 1182(a)(14), if he had invested $10,000 in an American commercial enterprise and had one year's prior training or experience in operating such an enterprise, 8 C.F.R. § 212.8(b)(4) (1974). Kim was duly granted a nonpreference immigrant visa on the basis of his investor status.

In April 1975, Kim filed an application under section 245(a) of the Immigration and Naturalization Act (the Act), 8 U.S.C. § 1255(a), to adjust his status from nonpreference immigrant to permanent resident based on his status as a business investor. The INS interviewed Kim in September of 1977 and found him eligible for the change in status. On March 14, 1978, the INS granted this adjustment to permanent resident alien status.

In 1980, the INS discovered that Kim had sold his interest in "Home of Gifts" several months before the INS granted his adjustment of status. The INS notified Kim that it intended to rescind his adjustment in a proceeding under section 246 of the Act, 8 U.S.C. § 1256, on the ground that, without a qualifying investment, Kim was not eligible at the time his application was approved for the adjustment of status granted.

Kim requested a hearing before an immigration judge. At this hearing, Kim conceded that he had divested his interest in "Home of Gifts" on January 1, 1978. He also admitted that he never procured a labor certification. The immigration judge ordered the rescission of Kim's permanent resident status, ruling that under 8 U.S.C. § 1182(a)(14), Kim had not been eligible for adjustment on March 14, 1978, because on that date he no longer owned the business that had been the basis for his application for adjustment of status. Although the regulations also permit application of the investor exemption if the alien is "actively in the process of investing," 8 C.F.R. § 212.8(b)(4) (1986), the immigration judge determined that Kim had not shown the ongoing and systematic plan required to prove that he intended to reinvest.

Kim then appealed to the Board of Immigration Appeals (BIA), where he made two arguments. First, he again argued that he was actively in the process of investing at the time of his adjustment of status. The BIA found that Kim had presented no evidence to support this claim. Second, Kim argued that even if he did not qualify for the investor exemption, the INS still had to prove that he intended to engage in labor in the United States and thus that he was ineligible for adjustment of status on the date the adjustment was granted. The BIA implicitly acknowledged that Kim

would have been eligible for adjustment of status if he had no intent to work. However, it applied the INS's standard presumption that incoming immigrants of suitable age and physical condition will seek employment and placed on Kim the burden of proving lack of intent as an affirmative defense. The BIA concluded that Kim had not met this burden and pointed out that Kim's claimed lack of intent was, in any case, belied by his subsequent employment in the United States.

Kim then brought the present action in the district court, where he abandoned the argument that he was actively in the process of investing. Instead, he argued that the BIA had improperly shifted to him the burden of proving that he had no intent to work. The district court agreed with the INS and held that, once Kim conceded his ineligibility for the investor exemption, the burden shifted to him to prove that he had no intent to work in the United States on the date his status was adjusted. Accordingly, the district court granted summary judgment to the government. We review the district court's summary judgment de novo. *Darring v. Kincheloe*, 783 F.2d 874, 876 (9th Cir.1986).

## II

The standard by which the INS must prove that the alien was not eligible for the adjustment of status granted him under INA § 245, 8 U.S.C. § 1255, is beyond dispute. In *Waziri v. INS*, 392 F.2d 55 (9th Cir.1968), we held that in section 246 rescission proceedings, the INS bears the burden of proving the facts it alleges by "clear, unequivocal, and convincing evidence." *Id.* at 57.

The question now before us is what the INS must prove in order to rescind Kim's permanent resident status. In essence, the INS argues that it must only prove that Kim was ineligible for adjustment of status on the ground he asserted in his application. Kim argues that the INS must prove that he was ineligible on any ground he now asserts.

The language of section 246 itself, unfortunately, is not helpful in resolving this issue. It could be interpreted to support either party. The section merely states that the Attorney General shall rescind the adjustment of status of a person whom he concludes "was not in fact eligible for such adjustment of status." 8 U.S.C. § 1256. Nor does the legislative history of the Act shed any light on the issue: the House Report on the bill employs the same ambiguous language as the statute. H.R.Rep. No. 1365, 82nd Cong., 2d Sess., at 63 (1952), U.S.Code Cong. & Admin.News 1952, p. 1653.

We look next to the INS's treatment of the statute, since an agency's interpretation of a statute it is responsible for administering is entitled to substantial deference. *Chevron U.S.A., Inc. v. National Resources Defense Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). The INS's pronouncements on the issue are not entirely clear. The regulations promulgated pursuant to section 246 refer only to a person "not in fact eligible for *the adjustment of status made in his case*." 8 C.F.R. § 246.1 (1986) (emphasis added). The INS's Operations Instructions make reference to "an alien ... not in fact eligible for the adjustment of status *granted to him*." INS, Operations Instructions, § 246.1 (1985) (emphasis added). When these terms are examined in the context of the INS's procedures for adjustment of status, however, they give some support to the government's position that the INS interprets section 246 to permit rescission of adjustment of status when it appears that the alien was not eligible for adjustment on the grounds he had asserted in his application. If this is true, then we should defer to that agency interpretation.

An alien wishing to secure permanent resident status under 8 U.S.C. § 1255 must first make out an application to the INS and show that he meets the statutory requirements for eligibility. 8 U.S.C. § 1255(a). The alien here bears the burden of proof. *Diric v. INS*, 400 F.2d 658, 660–

61 (9th Cir.1968), *cert. denied,* 394 U.S. 1015, 89 S.Ct. 1633, 23 L.Ed.2d 41 (1969). He also must be successfully interviewed by the INS. 8 C.F.R. § 245.8 (1986). Even if the alien succeeds in making the required showing of eligibility, however, the INS's decision to grant an adjustment of status is purely discretionary. *Patel v. Landon,* 739 F.2d 1455, 1457 (9th Cir.1984); *see* 8 U.S.C. § 1255(a). Adjustment of status is an extraordinary remedy to be granted only in meritorious cases, and the alien "has the burden of persuading the [INS] to exercise [its] discretion favorably." *Chen v. Foley,* 385 F.2d 929, 934 (6th Cir.1967), *cert. denied,* 393 U.S. 838, 89 S.Ct. 115, 21 L.Ed.2d 109 (1968). Every adjustment of status, therefore, is predicated upon both a showing of eligibility and a favorable exercise of agency discretion.

Against the background of this procedural system, the government's argument is premised upon the not illogical proposition that when the INS's regulations speak of an alien "not in fact eligible for the adjustment of status *made in his case,*" 8 C.F.R. § 246.1 (1986) (emphasis added), the agency was interpreting section 246 as requiring it to address only the grounds for eligibility that the alien asserted in his adjustment of status application and interview. This would follow from the proposition that the agency will exercise its discretion only upon the grounds that the alien, who has the burden of proof, has cited in making his request in his application and during his subsequent interview. An adjustment of status, therefore, could not have been based on a ground not cited by the alien because the requisite exercise of agency discretion on that issue is absent.

The stronger argument for affirmance, however, is based on policy grounds. To hold otherwise would require the INS to bear the burden of proof on a basis for eligibility that, as in this case, the alien did not assert until years after his status was adjusted. The INS presumably would not have performed any special investigation related to, or gathered any information on, unasserted grounds. To require the INS now to bear the burden of proving by "clear, unequivocal and convincing evidence" that these newly asserted grounds are untrue would place an impractical burden on the agency.

Moreover, the applicant is in the best position to prove the newly asserted ground for adjustment of status. He will obviously have greater access to the information necessary to demonstrate new grounds to support his previous adjustment.

This rule does not place an undue burden on the applicant.[1] Even if he is unable to prove the newly asserted ground, the rescission of an adjustment of status under section 246 does not forever render the alien ineligible for permanent residency. It merely returns him to where he was at the time of his earlier application. 8 U.S.C. § 1256. He is free to show eligibility on the newly asserted or any other ground.[2]

It is appropriate to impose upon the alien the obligation to assert all grounds for eligibility when he first applies for adjustment of status. Should multiple grounds exist, the alien is in a far better position than the INS to divine what they might be. The INS should not bear the burden of disproving assertions which it was never on notice it would have to investigate, which the alien failed to meet the burden of proving, and on which the INS has never been afforded the opportunity to exercise its discretion in the manner explicitly contemplated in 8 U.S.C. § 1255.

**1.** Contrary to the dissent's assertion, we do not shift the burden of proof set forth in *Waziri.* We merely must determine to what it applies in the specific context before us.

**2.** The dissent's extended discussion of other grounds under which Kim may be eligible for an adjustment of status, and the INS's attempts to refute these grounds, are not pertinent to the issue before us. Because the reference in section 246 to "such adjustment of status" means only an adjustment of status as granted on the grounds that the alien has asserted, the question of whether Kim might be eligible on another ground ceases to have any relevance in this case.

■ Since there is no dispute that the INS has borne its burden of proving that Kim was ineligible for the investor exemption upon which his original application for adjustment of status was based at the time the adjustment was granted, and that Kim did not assert facts demonstrating his newly asserted ground for adjustment, we hold that the district court correctly granted the government's motion for summary judgment.

AFFIRMED.

NORRIS, Circuit Judge, dissenting:

In *Waziri v. INS*, our circuit ruled that the INS bears the burden of proof in section 246 rescission proceedings. 392 F.2d 55, 57–58 (9th Cir.1968). In this case, the majority shifts this burden of proof to the permanent resident alien. Accordingly, I respectfully dissent.

Section 246 of the Immigration and Naturalization Act (the Act) provides in pertinent part that:

If, at any time within five years after the status of a person has been … adjusted under the provisions of section 1255 … of this title … to that of an alien lawfully admitted for permanent residence, it shall appear to the satisfaction of the Attorney General that the person was not in fact eligible for such adjustment of status, the Attorney General shall rescind the action taken granting an adjustment of status to such person … and the person shall thereupon be subject to all provisions of this chapter to the same extent as if the adjustment of status had not been made.

8 U.S.C. § 1256(a). The INS may challenge a permanent resident alien's eligibility for adjustment of status on a number of statutory grounds. *See* 8 U.S.C. § 1182(a) (enumerating 28 subgroups of excludable aliens). In this case, the INS claims Kim was ineligible at the time of his adjustment because he was excludable under section 212(a)(14) of the Act as an alien "seeking to enter the United States for the purpose of performing skilled or unskilled labor," without labor certification from the Secretary of Labor. 8 U.S.C. § 1182(a)(14); *see also* 8 C.F.R. § 245.1(b)(5) (1986).[1] The majority concedes that the INS has the burden of proving that Kim was excludable under section 212(a)(14), but holds that the INS carried its burden of proving that Kim intended to work here simply by proving that Kim sold his interest in "Home of Gifts" a few months before the INS granted his adjustment of status. Kim admits that the sale of his business interest disqualified him for the nonpreference investor exemption upon which he relied in his application for adjustment of status. *See* 8 C.F.R. § 212.8(b)(4) (1974). However, he argues that his ineligibility for the nonpreference investor exemption does not make him an excludable alien. As even the INS acknowledges, both section 212(a)(14) and the regulations state unequivocally that an alien is excludable only if he *intends to engage in skilled or unskilled labor in the United States* without proper labor certification. By shifting to the alien the burden of proving the absence of an intent to work in the United States at the time of the adjustment of status, the majority subverts *Waziri's* holding that the INS has the burden of proving ineligibility for adjustment of status in a rescission proceeding.

In essence, the majority converts a fundamental element of the INS's proof of ineligibility in a rescission action into an affirmative defense to be proven by the alien. The majority characterizes Kim's assertion that the INS bears the burden of proving that an alien intends to work in the United States as an attempt to assert a new ground for adjustment of status. This ignores the fact that the INS has chosen to attempt to prove Kim ineligible for adjustment of status under section 212(a)(14)'s exclusion, which requires a finding that the alien intended to work in the United States. Surely, if the INS decided to seek rescission of an alien's adjustment of status

1. The exclusions of 8 U.S.C. § 1182(a)(14) apply because they make an alien ineligible to receive an immigrant visa or be admitted to the United States, two requirements of eligibility for an adjustment of status under 8 U.S.C. § 1255(a).

because it later determined that the alien had entered the United States to "engage in [an] immoral sexual act," the INS would bear the burden of proving the alien's intent to engage in that act in violation of section 212(a)(13). I see no reason to treat the burden of proof differently when the INS chooses to seek rescission under subsection (14) rather than subsection (13), or any other exclusion category.

The majority further asserts that it would be "impractical" to place the burden of proof on the INS. I do not believe that the INS faces special difficulties in meeting its burden; requiring the alien to prove a negative hardly seems more practical than placing the burden on the INS to come forward with evidence to show that the alien had the intent to work in this country. Moreover, I do not find it "obvious" that the alien will have "greater access to the information necessary" to prove that he did not intend to work in the United States when he was granted his adjustment of status. The alien's testimony and credibility will certainly play a central role in the determination, but that fact alone can hardly justify shifting the burden of proof without an indication of congressional intent to do so. Nor can it justify a panel's failure to follow *Waziri* as controlling precedent.

Apparently, the majority has adopted for use in rescission proceedings the presumption applied by the INS to initial visa applications that "an intending immigrant is presumed to be seeking to enter for the purpose of performing labor unless he establishes the contrary," 1 C. Gordon & H. Rosenfield, *Immigration Law & Procedure* § 2.40c(1), at 2–292 (1986).[2] Unlike an incoming immigrant who must prove he is eligible for admission to the United States,

a permanent resident has many of the rights of a citizen including an interest in "the opportunity to earn a living, to improve his economic circumstances, and to engage in common occupations, without unreasonable limitation or invidious discrimination." *Yui Sing Tse v. INS,* 596 F.2d 831, 834 (9th Cir.1979); *see also* 1 Gordon & Rosenfield, *Immigration Law and Procedure* §§ 1.30–1.38, at 1–162 to 1–186 (1986). These attributes of citizenship are not lightly given, and once granted may not be divested by the mere application of a "presumption." Indeed, since a rescission proceeding "paves the way for deportation," *Matter of Samedi,* 14 I & N Dec. 625, 627 (1974) (Roberts, Chairman, dissenting), section 246 is subject to the general rule that "deportation statutes are to be construed in favor of the alien." *Yui Sing Tse,* 596 F.2d at 835.[3] If Congress had intended to deprive permanent resident aliens of their status without proof that the aliens were in fact excludable, it certainly would have said so explicitly. Accordingly, even though the presumption may hold when the alien applies for adjustment of status, it should not be imported into rescission proceedings to abrogate the government's burden of proving ineligibility by clear and convincing evidence. *See Waziri,* 392 F.2d at 57. I would therefore reverse and remand this case to allow the INS to attempt to satisfy its burden of proving that at the time Kim's status was adjusted, he intended to work in the United States.

---

**2.** The INS also disingenuously argues that Kim must prove he does not intend to work in the United States because 8 U.S.C. § 1256(a) places permanent resident aliens whose status is rescinded in the same position they occupied prior to adjustment of status. Even if applicants for admission to the United States bear the burden of proving lack of intent to work, permanent resident aliens are not returned to that position until after the government rescinds their adjusted status by proving they were ineligible for adjustment in the first place.

**3.** The link between rescission proceedings and deportation was the foundation for this court's application of the *Woodby v. INS,* 385 U.S. 276, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966), requirement of "clear, unequivocal, and convincing" evidence to a rescission proceeding. *Waziri,* 392 F.2d at 57 ("If the objective of *Woodby*—that aliens not be deported unless the facts alleged by the government are found to be true by clear, unequivocal, and convincing evidence—is to be realized, then the *Woodby* standard of proof must apply in the rescission proceeding.")